Affirmed and Memorandum Opinion filed February 6, 2003














Affirmed and
Memorandum Opinion filed February 6, 2003.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-02-00221-CV

_______________

 

 

IN THE
INTEREST OF R.M., A CHILD

 

 

_____________________________________________________________________

 

On Appeal from
the 315th District Court

Harris County, Texas

Trial Court
Cause No. 00-07459J

_____________________________________________________________________

 

M E M O R A N D U M   O P I N I O
N

            Appellant T.M. challenges the
termination of parental rights to her child, R.M.  The Texas Department of Protective and
Regulatory Services (“the Department”) brought suit to terminate the
parent-child relationship on October
 16, 2000.  The court
terminated appellant’s parental rights on February 26, 2002. 
On appeal, appellant contends the evidence was legally insufficient, or
in the alternative, factually insufficient to support the trial court’s
findings.  We affirm.

Background

            R.M. was born on October 10, 2000, to
appellant, T.M.  Two days later, the
Department received a referral concerning the child’s safety.  A subsequent investigation revealed appellant
was suffering from major depressive disorder and contemplating suicide.  Furthermore, appellant’s four other children
had been previously taken into custody by Child Protective Services (“CPS”),
and appellant did not have appropriate living arrangements at the time for her
and R.M.  The Department was unsuccessful
in its attempt to find a relative or friend for temporary placement of
R.M.  The Department filed suit to
terminate the parent-child relationship on October 16, 2000, and R.M. was placed into
protective custody.[1]

            The Department instructed
appellant to seek psychological and psychiatric examinations and to follow the
recommendations made after the examinations. 
Additionally, appellant was required to enroll in parenting classes,
participate in individual counseling, and receive a drug assessment.  Appellant completed the psychological and
psychiatric evaluations, parenting classes, and the drug assessment.  However, she failed to maintain a steady
home, remain employed for six months, follow recommendations to undergo a
medical examination, and participate regularly in individual and group
therapy.  The Department caseworker
testified appellant was referred to individual therapy in May 2001, but did not
attend her first therapy session until September 2001.  She further testified that once appellant
began therapy, her attendance was sporadic. 
The caseworker testified that appellant offered various excuses
regarding her failure to attend therapy including “she had a lot going on,”
“she was sick,” and it was “too much of a hassle for her.”

            The caseworker also testified that
in the seventeen months since R.M.’s birth, appellant
visited R.M. only six times — once in January 2001, once in July 2001, twice in
August 2001, once in September 2001, and once in October 2001.  Appellant testified she also visited R.M. on December 18, 2001.[2]  However, appellant later testified she did
not attend the pre-placement visits because she could not get there on
time.  The caseworker testified that
nothing prevented appellant from visiting R.M. 
According to the caseworker, appellant’s occasional visits with R.M.
went well.  However, the caseworker
testified that on one occasion appellant visited with R.M. for only five to ten
minutes.  Appellant told the caseworker
that she was bored, and she sat in the caseworker’s office for the remainder of
the visit.

            Furthermore, as late as December
2001, appellant continued to contemplate suicide.  Although appellant initially denied suicidal
thoughts, she later testified that when her therapist asked if she felt like
killing herself, her response was, “yes.”

            Finally, the caseworker testified
R.M. had been placed with her paternal cousin and that the cousin wanted to
adopt her.  The caseworker opined that
termination of appellant’s parental rights and adoption of R.M. by the cousin
would be in the child’s best interest. 
The trial court found: (1) appellant engaged in conduct or knowingly
placed the child with persons who engaged in conduct that endangered the
physical or emotional well-being of the child; (2) appellant constructively
abandoned the child; and (3) terminating the parent-child relationship between
appellant and R.M. was in the best interest of the child.[3]

Standard of Review

            Before a parent’s parental
rights are terminated, the Department must first prove the parent committed one
or more of the acts or omissions specifically named in the Family Code as
grounds for termination.  Tex. Fam. Code Ann.§
161.001 (1) (Vernon 2002).  The Department alleged: (1) appellant engaged
in conduct or knowingly placed the child with persons who engaged in conduct
that endangered the physical or emotional well-being of the child, and (2) she
constructively abandoned the child.  See Tex.
Fam. Code Ann. § 161.001 (1)(E),(N). 
Once a prohibited act is proved, the Department must then show
termination of parental rights is in the best interest of the child.  Tex. Fam. Code Ann. § 161.001 (2) (Vernon 2002).  Both elements must be proved by clear and
convincing evidence.  Tex. Fam. Code Ann.
§ 161.001; see also Santosky v. Kramer, 445 U.S. 745,
768–70 (1982) (applying clear and convincing evidence standard in termination
case).  The trial court found clear and
convincing evidence to support all three of these elements.  Appellant challenges the legal and factual
sufficiency of the evidence supporting each of these findings.

            When reviewing the legal sufficiency
of the evidence, we look at all the evidence in the light most favorable to the
finding to determine whether the factfinder could
have formed a firm belief or conviction that its finding was true.  In re
J.F.C., 46 Tex. Sup. Ct.
J. 328, 2002 WL 31890913, at *6 (Dec. 31, 2002).  To
appropriately defer to the factfinder’s conclusions,
we must assume that it resolved disputed facts in favor of its finding.   Id.  We disregard all evidence that a reasonable trier of fact could have disbelieved or found to have been
incredible.  Id.  

            When reviewing factual sufficiency
of the evidence in a termination proceeding, we apply the standard recently
pronounced by the Texas Supreme Court.  See In re C.H., 89 S.W.2d 17, 25–26 (Tex.
2002).  We review the evidence to
determine whether a factfinder could reasonably form
a firm belief or conviction about the truth of the allegations.  Id.  “If, in light of the entire record, the
disputed evidence that a reasonable factfinder could
not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief
or conviction, then the evidence is factually insufficient.”  In re
J.F.C., 2002 WL 31890913, at *6.




Discussion

I.          Endangering
the physical and emotional well-being of the child

            Appellant first challenges the
sufficiency of the evidence that appellant engaged in conduct or knowingly placed
the child with persons who engaged in conduct that endangered the physical or
emotional well-being of the child.  See Tex.
Fam. Code Ann. § 161.001 (1)(E).  Appellant claims she did not endanger R.M.
during the few days she had possession of her after her birth.  The term “endanger” as used in the Family
Code does not require physical injury.  In re M.C., 917 S.W.2d 268, 269 (Tex.
1996).  Endangerment may occur through
acts or omissions of the parent; there is no requirement that the conduct in
question be directed toward the child in order to endanger the child’s
emotional well-being.  Id.  However,
there must be “more than a threat of metaphysical injury or the possible ill
effects of a less-than-ideal family environment.”  Id. (quoting Dep’t of Human Servs.
v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987)).

            The Department contends appellant
endangered R.M. because of her major depressive disorder, her suicidal
ideations, and her failure to receive the proper therapy.  Although several courts have considered a
parent’s suicide attempts as endangerment to a child’s physical or emotional
well-being, there typically have been other factors involved.  See In
re A.M.C., 2 S.W.3d 707, 716–17 (Tex. App.—Waco 1999, no pet.) (noting
appellant’s mother’s attempted suicide; the court also considered the
appellant’s failure to provide medical care, failure to supervise her child by
a busy intersection, and admittance of an abusive relative into her home); In re B.R., 950 S.W.2d 113, 121 (Tex.
App.—El Paso 1997, no writ) (noting parent had killed child’s mother, abused
alcohol, cocaine, and marijuana, in addition to attempting suicide).

            We employ such an analysis
here.  Although appellant’s suicidal
ideations alone may not have amounted to endangerment, the factors stated by
the Department and other facts in the record provide sufficient evidence of
endangerment.  See Carter v. Dallas County Child Welfare Unit, 532 S.W.2d 140, 142
(Tex. Civ. App.—Dallas 1975, no writ) (“A parent’s
mental state may allow or compel him to engage in conduct which endangers the
physical or emotional well-being of his child, and in such event, that conduct
is evidence bearing upon the advisability of terminating the parent-child
relationship.”)

            Substantial evidence, including
testimony, doctor’s reports, and evaluations, indicated appellant suffered from
a major depressive disorder.  Appellant
points to several instances where she attempted to seek treatment for her
mental disorder.  There was little
dispute about appellant’s completion of parenting classes and her psychological
and psychiatric evaluations.  However, a
critical factor weighing against appellant is her failure to maintain a
consistent therapy schedule.  Because she
did not seek care consistently, her mental condition continued to affect her,
such as suicidal ideation a year after R.M.’s birth. 

            Additionally, there was evidence
appellant failed to establish a stable residence or maintain employment.  At the time of trial, appellant claimed to be
living with a woman she had met approximately one month prior to the
trial.  Before trial, the Department was
unable to confirm any permanent residence. 
On one occasion in October 2001, appellant informed the caseworker she
had an apartment.  However, when the
caseworker scheduled a meeting at the apartment, appellant never arrived.  Appellant testified that she was only “trying
to live there” and that “it didn’t work out.” 
Regarding appellant’s employment, the caseworker testified that the only
record she had was of appellant’s employment as a security guard from June 4, 2001 to August 10, 2001.  Appellant testified she was employed at a
security company during October 2001. 
However, the only proof of employment introduced into evidence was a
computer input form.

            Appellant contends she did not
engage in any conduct that endangered R.M. because the child was taken into
custody only three days after birth.  She
points out there were no signs of abuse or neglect and the child was born
healthy.  Appellant argues the child was
taken away because of a risk of danger, not conduct.  Although this argument may be a cause for
concern, it is not novel.  See In re B.B., 971 S.W.2d 160 (Tex.
App.—Beaumont 1998, pet. denied), disapproved
on other grounds by In re C.H., 89 S.W.3d at 26.  In B.B.,
one of appellant’s two children was removed from her custody one week after the
child’s birth, despite the lack of physical abuse or neglect.  Id. at 164.  The
child was removed because of the risk associated with the physical abuse of the
appellant’s other child.  Id.  The court
explained, “if the evidence ‘shows a course of conduct which has the effect of
endangering the physical or emotional well-being of the child,’” a finding of
endangerment is supportable.  Id. (quoting Boyd,
727 S.W.2d at 534).  The court focused on
two key factors demonstrating endangerment: (1) the appellant’s drinking
problem and tendency to become violent while intoxicated; and (2) the
appellant’s failure to seek the help recommended by CPS for her drinking
problem.  Id.  Likewise, in this
case, appellant: (1) suffered from a major depressive disorder which led to
suicidal tendencies; and (2) failed to seek the help recommended by mental
health professionals and the Department for her depression.

            We do not believe the Department
need await the occurrence of a tragic event before taking action in a
termination case.  Appellant’s “course of
conduct” sufficiently proved “more than a threat of metaphysical injury or the
possible ill effects of a less-than-ideal family environment.”   Boyd, 727 S.W.2d at 534; In re M.C., 917 S.W.2d at 269.  We conclude there was more than a scintilla
of evidence to support the trial court’s finding that appellant engaged in
conduct endangering the physical or emotional well-being of R.M.  Furthermore, we conclude that a factfinder could reasonably form a firm belief or
conviction that appellant’s conduct endangered the physical or emotional
well-being of R.M.

II.        Constructive
Abandonment

            In her second issue, appellant
contends the evidence is legally and factually insufficient to support the
trial court’s finding that appellant constructively abandoned R.M.  Under the Family Code, to show constructive
abandonment, the Department must prove by clear and convincing evidence that
the child had: 

been in the
permanent or temporary managing conservatorship of
the Department of Protective and Regulatory Services or an authorized agency
for not less than six months, and: (i) the department
or authorized agency has made reasonable efforts to return the child to the
parent; (ii) the parent has not regularly visited or maintained significant
contact with the child; and (iii) the parent has demonstrated an inability to
provide the child with a safe environment.

Tex. Fam. Code § 161.001
(1)(N).

            R.M. was taken into protective
custody by the Department shortly after her birth on October 13, 2000.  She was placed in a foster home on October 16, 2000, and
remained there until December
 21, 2001, when she was subsequently placed with a family
member.  Appellant acknowledges the child
was under the managing conservatorship of the
Department, and there is no dispute that the Department made reasonable efforts
to return the child to appellant.

            Appellant argues her limited number
of visits and attempts to visit her daughter negate any constructive
abandonment.  Appellant testified she
made at least ten or more visits. 
However, the caseworker testified appellant visited her child only six
times between R.M.’s placement and the time of
trial.  Notwithstanding the dispute over
the exact number of visits, we find the evidence is both legally and factually
sufficient to show appellant had not regularly visited or maintained
significant contact with R.M.  See In re H.R., 87 S.W.3d 691, 699 (Tex. App.—San
Antonio 2002, no pet.) (finding sufficient evidence of constructive abandonment
where parent’s visits were intermittent); In
re P.R., 994 S.W.2d 411, 416 (Tex. App.—Fort Worth 1999, pet. dism’d w.o.j.) (finding
sufficient evidence of constructive abandonment where parent had numerous, yet
sporadic visits).

            Furthermore, there is legally and
factually sufficient evidence demonstrating appellant’s inability to provide a
safe environment for the child.  As
indicated above, appellant failed to establish a permanent residence or
maintain steady employment.  Appellant
also failed to attend the necessary therapy sessions recommended to her.

            We find there is legally and
factually sufficient evidence supporting the trial court’s conclusion that
appellant constructively abandoned R.M.

III.       Best
Interest of the Child

            We now turn our focus to the second
prong of our inquiry — the best interest of the child.  In her third issue, appellant argues the
evidence was legally and factually insufficient to support the trial court’s
finding that terminating her parental rights was in R.M.’s
best interest.

            The factors that may be considered
when determining the best interest of the child include: (1) the desires of the
child; (2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future; (4)
the parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and (9) any excuse for the acts or
omissions of the parent.  Holley v. Adams, 544 S.W.2d 367, 371–72 (Tex.
1976).  This list is non-exclusive; a factfinder is not required to consider all of these listed
factors.  Id. at 372. 
Considering R.M.’s emotional and physical
needs and the danger to her now and in the future, appellant’s parental
abilities, the Department’s plans for R.M., and the stability of the proposed
placement options, we find the evidence is legally and factually sufficient to
support the trial court’s finding that termination of the parent-child
relationship was in the best interest of the child.

            A.        The Emotional and Physical Needs of the
Child and Danger to Her Now and In the Future

 

            In October 2001, R.M. was evaluated
by a psychologist, who noted that R.M. needed to receive warm, consistent, and
attentive care.  The caseworker testified
R.M. was very social and interacted well with others.  At the time of trial, R.M. was in generally
good health and developing normally. 
However, regular examination by a pediatrician was recommended so that
her respiratory problems and social and physical development could be
monitored. 

            We recognize R.M.’s
physical and emotional needs appear to be relatively normal in comparison to
other children her age.  However, these
basic needs viewed in context of the potential danger created by appellant
then, now, and in the future, weigh in favor of termination.  Appellant never provided R.M. consistent,
warm, attentive care.  Appellant
maintained only incidental contact with her daughter.  During appellant’s few visits with R.M., R.M.
did not recognize her.  Further, the
caseworker testified that a mother-daughter bond did not exist between
appellant and R.M.[4]  Additionally, appellant never received a
physical examination as recommended by her psychologist and by the Department,
despite concerns she had syphilis and had been affected by multiple head
injuries.  Appellant’s failure to obtain
appropriate medical care is some evidence of her inability to meet R.M.’s physical and emotional needs.  We find the trial court could have considered
this evidence in finding termination was in the child’s best interest.

            B.        The Parental Abilities of Appellant

            In addition to R.M., appellant had
four other children.  All four had been
removed from appellant’s care and placed with other family members because of
appellant’s negligent supervision. 
Appellant testified she did not visit nor provide for those
children.  Although this history weighs
heavily against appellant, we have considered testimony that appellant
completed the recommended parenting classes. 
Appellant testified the parenting classes helped build her self-esteem
and realize that she had the capacity to be a good mother.  Despite the parenting classes, appellant
still failed to visit R.M. consistently. 
As with her other children, appellant provided R.M. little, if any,
support.

            Lastly, we note appellant’s lack of
familial assistance.  The caseworker
testified appellant had little contact with relatives and no family
support.  Although a paternal cousin was
caring for R.M. at the time of trial, appellant testified she and the cousin
did not get along.  

            The trial court could have
considered this evidence of appellant’s parental abilities in determining
whether termination was in the best interest of the child.

            C.        Plans for the Child by the Department
and the Stability of the Proposed Placement Options

 

            The caseworker testified that R.M.’s paternal cousin wanted to adopt her.  She further testified that R.M. adjusted well
to living in the cousin’s home, where a structured and nurturing environment
was provided.  Additionally, unlike with
appellant, the caseworker witnessed a definite bond between the cousin and
R.M.  The caseworker explained the cousin
wanted to provide R.M. with permanency. 
When determining the best interest of the child, “the need for
permanence is the paramount consideration for the child’s present and future 

 class=Section2>

physical
and emotional needs.”  Dupree v. Tex. Dep’t of Protective and
Regulatory Servs., 907 S.W.2d 81, 87 (Tex.
App.—Dallas 1995, no writ).  “The goal of
establishing a stable, permanent home for a child is a compelling interest of
the government.”  Id.

            In contrast, appellant claimed to
live with a woman she had met approximately one month prior to the trial.  The Department was previously unable to
confirm a permanent residence.  Appellant
admitted she lost jobs because she did not arrive on time.  The only employment the Department confirmed
lasted only two months.  When asked about
her future plans, appellant stated she was considering working on a ship and
going overseas.  Based on these factors,
the trial court had sufficient evidence to find that appellant was unable to
provide necessary permanency and stability for R.M.

                                                                Conclusion

            We hold the evidence is both legally
and factually sufficient to support the trial court’s finding: (1) appellant
engaged in conduct that endangered the physical or emotional well-being of
R.M.; (2) appellant constructively abandoned R.M.; and (3) terminating
appellant’s parental rights was in the best interest of the child.

            Accordingly, we overrule appellant’s
three issues and affirm the trial court’s judgment.

                                                                        

                                                            /s/        Charles W. Seymore

                                                                        Justice

 

Judgment rendered and
Memorandum Opinion filed February 6, 2003.

Panel consists of Justices
Edelman, Seymore, and Guzman.

 











            [1]  In this Original Petition, the Department moved to terminate the
parental rights of appellant and the presumed/alleged father, R.C.  R.C. initially appeared with counsel during
the early phase of the case, but was absent throughout the trial.





            [2]  Appellant notes in her brief that the CPS Monthly Summary/Assessment,
admitted into evidence as part of the case file, states appellant visited with
R.M. on “12-18-00,” accounting for one
additional visit.  Appellant argues this
contradicts the caseworker’s testimony that no visits took place during
October, November, or December 2000.





            [3]  The trial court also terminated the presumed/alleged father’s parental
rights.





            [4]  Appellant notes that the caseworker was not declared an expert.  She apparently contends the Department failed
to meet its burden because no mental health professionals, therapists, or other
experts testified about the best interests of the child.  Appellant, however, does not provide any
authority that the testimony of a mental health professional, therapist, or
other expert is required to prove that termination of parental rights is in the
best interest of a child.  The trial
court, as the trier of fact, was entitled to
determine the credibility and weight to give to the caseworker’s
testimony.  See Nordstrom v. Nordstrom, 965 S.W.2d 575, 580 (Tex. App.—Houston
[1st Dist.] 1997, pet. denied).