Criminal Case Template














COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




PAMELA BABCOCK KING,


 Appellant,


v.


TEXAS DEPARTMENT OF
PROTECTIVE AND REGULATORY
SERVICES,


 Appellee.

§


§


§


§


§

No. 08-03-00100-CV


Appeal from the


318th Judicial District Court


of Midland County, Texas


(TC# FM 38,886)



M E M O R A N D U M O P I N I O N


 This is an appeal from the involuntary termination of parental rights under Chapter
161.001 of the Texas Family Code. Tex. Fam. Code Ann. § 161.001 (Vernon 2002). For
the reasons stated, we affirm.

I. SUMMARY OF THE EVIDENCE


 Appellant, Pamela Babcock King, is one of six children of Sharon Babcock
("Babcock") and Philip Babcock. King has six children, four of whom were the subject of
this termination suit. R.K. was born October 17, 1990 and was twelve years old at the time
of trial. K.K. was born March 17, 1992 and was ten years old at the time of trial. The twin
girls, J.J.S.B. and A.A.S.B., were born August 18, 1998 and were four years old at the time
of trial. The four oldest children were the subjects of the termination suit. J.B., King's fifth
child, was born January 7, 2000 and was almost three years old at the time of trial. King's
sixth child was born seven months before trial and was given up for adoption. 

 King married Leland King when she was sixteen years old. He was twenty-seven at
the time they were married. Leland is the father of R.K. and K.K. She does not know who
the father of the twins is. Earnest Wompler is the father of J.B. King testified that Gary
Bennett, her "boyfriend at the time", is the father of her sixth child. 

 Appellee, the Texas Department of Protective and Regulatory Services (the
"Department"), became involved with the Babcock family in 1979 when King was eight
years old. The Department investigated numerous allegations regarding the Babcock
household over the next twenty years. 

 King and Leland were married for seven years. During that time, Leland did not keep
steady employment and when he was not working, they lived with Leland's sister. When
King left Leland, she was twenty-three, R.K. was three and K.K. was almost one. King
moved into her parent's home where four of King's younger siblings were still living. King
then moved out of the home and left R.K. and K.K. in Babcock's care. King admitted
moving in and out of the Babcock home when things did not work out with her current
boyfriend. She lived in Maryland in 2000-2001 and also in Missouri at some point. King
admitted that while the children were living in the Babcock house, she "would just come
back and forth into town." 

 King admitted smoking marijuana and using other drugs. She admitted using drugs
during her pregnancies with K.K. and the twins. While pregnant with K.K., King told her
obstetrician gynecologist that she had smoked marijuana the previous day and night, January
30, 1992. On February 2, 1992, King tested positive for marijuana at Midland Memorial
Hospital. King took another drug screen on March 17, 1992, the day K.K. was born, and
again tested positive for marijuana. When questioned about her marijuana use, King said that
she did not believe marijuana was a drug; she considered it to be an herb. She explained that
she was quoting Leland and that she "just believed anything he said." 

 The twins, J.J.S.B. and A.A.S.B., were born premature at seven months. J.J.S.B. had
a heart murmur and was in a lot of distress when she was born. A.A.S.B., the first-born twin,
tested positive for marijuana at birth. The twins were hospitalized for some time and on one
visit, King showed up in an inebriated state and reeking of alcohol. Her probation officer
was notified and King was picked up and taken home. King admitted that she was a "major
alcoholic" at this point in her life. 

 King also admitted that she had emotional problems, "a lot of depression" starting in
1993. King went to several "mental hospitals" and was admitted five times in 1993. Her
mental health problems continued into 1994 and she was again admitted to mental hospitals
in 1996. King admitted to being suicidal twice in her life. A progress note from Midland
Memorial Hospital in 1998 concludes that King "has a personality disorder, manic
depressant." King would visit the twins for breast-feeding and began "demonstrating more
and more bizarre behavior." The hospital decided that King should no longer be allowed to
breast-feed because there was a belief that she was endangering the twins by removing them
from the unit. 

 Dr. David Koch, a clinical psychologist, conducted psychological evaluations of King
on February 28, 2000 and February 6, 2002. Dr. Koch testified that King "exhibited
instability in her relationships over the years, poor decision-making, dependence on others
that led to abusive kinds of relationships, and inability to really effectively establish or
maintain an adult type of identity." He also noted that she was "very unstable" and was
involved in "abusive types of relationships in the marital area as well." He stated that she
had "difficulties managing herself" and made "poor choices in her relations with males." 
Dr. Koch concluded that King was not the type of individual who could provide a safe and
nurturing environment for children. 

 In January of 1996, King was convicted of misdemeanor possession of marijuana and
spent ten days in jail. On January 18, 1996, King was arrested for failing to identify to a
police officer and spent five days in jail. She was also arrested for unauthorized use of a
motor vehicle in 1996. On March 20, 1996, King was again arrested for failing to identify
to a police officer and spent three days in jail. On June 3, 1996, King was arrested for
possession of drug paraphernalia. On October 31, 1997, King was arrested for public
intoxication. On June 4, 1998, King was arrested for possession of marijuana and for
possession of drug paraphernalia and spent fifteen days in jail. On July 10, 1998, King was
arrested for felony bond forfeiture for failing to appear at a court date on the unauthorized
use of a motor vehicle charge. King also had a misdemeanor conviction for hindering
apprehension. King was on probation for felony bond jumping at the time of trial. 

 King stated at trial that she could not read, did not have a driver's license, and had
never been employed. At the time of trial, she lived with her father in Odessa and received
$550 a month in Social Security Disability Income. King's depression is listed as her
disability. 

 King had left Midland and was supposedly living in Rankin when her four children
were first removed from Babcock's house in April of 2000. When the children were placed
in the Department's custody, King signed family service plans that set out tasks she needed
to accomplish in order to be reunited with her children. At some point though, King left
Midland and was not there when the children were subsequently placed back in the Babcock
household on December 4, 2000. The Department removed the children from Babcock's
house again in December of 2001 and this removal led to the Department seeking termination
of King's parental rights. The suit was tried to a jury. The charge submitted to the jury
instructed that, to terminate King's parental rights, the jury would have to find by clear and
convincing evidence that at least one of the events set out in the four grounds detailed in the
charge occurred and that termination of King's parental rights would be in the best interest
of the children. The jury terminated King's rights to R.K., K.K., J.J.S.B. and A.A.S.B. This
appeal follows. 

II. DISCUSSION


 In nine issues, Appellant attacks the legal and factual sufficiency of the evidence to
support the termination of her parental rights and asserts that she received ineffective
assistance of counsel. 

A. Burden of Proof in Termination Proceedings

 A parent's rights to "the companionship, care, custody, and management" of his or
her children are constitutional interests "far more precious than any property right." Santosky
v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982); accord
Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). The United States Supreme Court, in
discussing the constitutional stature of parental rights, states, "[T]he interest of parents in the
care, custody, and control of their children--is perhaps the oldest of the fundamental liberty
interests recognized by this Court." Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054,
2060, 147 L.Ed.2d 49 (2000). Nonetheless, while parental rights are of constitutional
magnitude, they are not absolute. In re C.H., 89 S.W.3d 17, 26 (Tex. 2002). Just as it is
imperative for courts to recognize the constitutional underpinnings of the parent-child
relationship, it is also essential that emotional and physical interests of the child not be
sacrificed merely to preserve that right. Id.


 In proceedings to terminate the parent-child relationship brought under section
161.001 of the Texas Family Code, the Department must establish one or more of the acts
or omissions enumerated under subsection (1) of the statute and must also prove that
termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (Vernon
2002); Swate v. Swate, 72 S.W.3d 763, 766 (Tex. App.--Waco 2002, pet. denied). Both
elements must be established; termination may not be based solely on the best interest of the
child as determined by the trier of fact. Texas Dep't of Human Services v. Boyd, 727 S.W.2d
531, 533 (Tex. 1987). Because of the elevated status of parental rights, the quantum of proof
required in a termination proceeding is elevated from the preponderance of the evidence to
clear and convincing evidence. Santosky, 455 U.S. at 746, 102 S.Ct. at 1391; see also Tex.
Fam. Code Ann. § 161.001.

 Clear and convincing evidence is "the measure or degree of proof that will produce
in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established." Tex. Fam. Code Ann. § 101.007; In re J.F.C., 96 S.W.3d 256,
264 (Tex. 2002); C.H., 89 S.W.3d at 25. This intermediate standard falls between the
preponderance standard of ordinary civil proceedings and the reasonable doubt standard in
criminal proceedings. State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979); In re D.T., 34
S.W.3d 625, 630 (Tex. App.--Fort Worth 2001, pet. denied) (op. on reh'g). While the proof
must be more than merely the greater weight of the credible evidence, there is no requirement
that the evidence be unequivocal or undisputed. Addington, 588 S.W.2d at 570. Termination
proceedings should be strictly scrutinized, and involuntary termination statutes are strictly
construed in favor of the parent. Holick, 685 S.W.2d at 20-21; In re A.V., 849 S.W.2d 393,
400 (Tex. App.--Fort Worth 1993, no writ).

 In the instant case, the Department sought to have King's parental rights terminated
under Section 161.001(1)(C), (D) and (E) and Section 161.003(a) of the Texas Family Code.
Tex. Fam. Code. Ann. §§ 161.001(1)(C), (D) and (E), 161.003(a) (Vernon 2002). The
relevant subsections under Section 161.001 state that the court may order termination of the
parent-child relationship if the court finds by clear and convincing evidence that the parent
has:

(C) voluntarily left the child alone or in the possession of another without
providing adequate support of the child and remained away for a period of
at least six months;


(D) knowingly placed or knowingly allowed the child to remain in
conditions or surroundings which endanger the physical or emotional
well-being of the child;


(E) engaged in conduct or knowingly placed the child with persons who
engaged in conduct which endangers the physical or emotional well-being
of the child;


Tex. Fam. Code. Ann. § 161.001(1)(C), (D) and (E). Section 161.003(a) allows a court to
order termination of parental rights if it finds that: 

(1) the parent has a mental or emotional illness or a mental deficiency that
renders the parent unable to provide for the physical, emotional, and mental
needs of the child; 


(2) the illness or deficiency, in all reasonable probability, proved by clear
and convincing evidence, will continue to render the parent unable to
provide for the child's needs until the 18th birthday of the child; 

(3) the department has been the temporary or sole managing conservator of
the child of the parent for at least six months preceding the date of the
hearing on the termination held in accordance with Subsection (c); 


(4) the department has made reasonable efforts to return the child to the
parent; and 


(5) the termination is in the best interest of the child. 


Tex. Fam. Code Ann. § 161.003(a)(Vernon 2002). King does not challenge the jury's
finding that termination of her parental rights is in the best interest of the children. In Issues
No. One through Four, King challenges the legal sufficiency of the jury's finding of
termination under Section 161.001(1)(C), (D) and (E) and Section 161.003(a). In Issues No.
Five through Eight, King challenges the factual sufficiency of the jury's finding of
termination under Section 161.001(1)(C), (D) and (E) and Section 161.003(a). In Issue No.
Nine, King asserts that the failure of her trial counsel to object to the charge's submission of
the termination of King's parental rights by broad form question deprived King of her
statutory right to effective assistance of counsel.

B. Legal and Factual Sufficiency

 The Texas Supreme Court recently clarified the appellate standards of review to be
applied to legal and factual sufficiency of the evidence challenges in light of the clear and
convincing evidence burden of proof in termination proceedings. In re J.F.C., 96 S.W.3d
at 264-68 (discussing legal sufficiency review); In re C.H., 89 S.W.3d at 25 (discussing
factual sufficiency review). Because termination findings must be based upon clear and
convincing evidence, not simply a preponderance of the evidence, the supreme court has held
that the traditional legal and factual standards of review are inadequate. J.F.C., 96 S.W.3d
at 265; C.H., 89 S.W.3d at 25. Instead, both legal and factual sufficiency reviews in
termination cases must take into consideration whether the evidence is such that a fact finder
could reasonably form a firm belief or conviction about the truth of the matter on which the
State bears the burden of proof. J.F.C., 96 S.W.3d at 265-66; C.H., 89 S.W.3d at 25. With
respect to a legal sufficiency point, we "look at all the evidence in the light most favorable
to the finding to determine whether a reasonable trier of fact could have formed a firm belief
or conviction that its finding was true." J.F.C., 96 S.W.3d at 266. In determining a factual
sufficiency point, we must give due consideration to evidence that the fact finder could
reasonably have found to be clear and convincing and then determine whether, based on the
entire record, a fact finder could reasonably form a firm conviction or belief that the parent
violated one of the provisions of section 161.001 and that the termination of his or her
parental rights would be in the child's best interest. Tex. Fam. Code Ann. § 161.001; C.H.,
89 S.W.3d at 25.

1. Waiver


 The Department contends that King has waived Issues No. Three and Seven by
inadequate briefing. Specifically, the Department notes that King does not even mention the
"endangering conduct" ground in the body of her argument and wholly fails to cite authority
to support this ground. After a thorough review of King's brief, we note that in addressing
the legal sufficiency issues together, she only provides argument for Section 161.001(C) and
(D) and Section 161.003(a), and in addressing the factual sufficiency issues together, she
merely recites background facts about her family and children and argues that "no child,
through counsel[,] asked to be terminated." The only cases cited under the factual
sufficiency argument are Santosky v. Kramer, 455 U.S. at 758-59 (parent's rights to "the
companionship, care, custody, and management" of his or her children are constitutional
interests "far more precious than any property right.") and State v. Addington, 588 S.W.2d
569, 570 (adopting the "clear and convincing evidence" standard of proof.).

 Rule 38.1(h) of the Texas Rules of Appellate Procedure provides that a brief must
contain clear and concise argument for contentions made, with appropriate citations to
authorities and to the record. Tex. R. App. P. 38.1(h). It is well-established that failure to
cite authority or provide substantive analysis waives an issue on appeal. See Federal Sign
v. Tex. S. Univ., 951 S.W.2d 401, 410 (Tex. 1997); Sunnyside Feedyard, L.C. v. Metro. Life
Ins. Co., 106 S.W.3d 169, 173 (Tex. App.--Amarillo 2003, no pet.); Nguyen v. Kosnoski, 93
S.W.3d 186, 188 (Tex. App.--Houston [14th Dist.] 2002, no pet.); Texas Dep't of Pub. Safety
v. Struve, 79 S.W.3d 796, 801 n.6 (Tex. App.--Corpus Christi 2002, pet. denied). This Court
has also held that the failure to cite authority in support of point of error waives complaint. 
See Leyva v. Leyva, 960 S.W.2d 732, 734 (Tex. App.--El Paso 1997, no writ). Moreover, the
Supreme Court has held that error may be waived due to inadequate briefing. Fredonia State
Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994). Rule 38 requires King to
provide us with such discussion of the facts and the authorities relied upon as may be
requisite to maintain the point at issue. See Franklin v. Enserch, Inc., 961 S.W.2d 704, 711
(Tex. App.--Amarillo 1998, no pet.). This is not done by merely uttering brief conclusory
statements, unsupported by legal citations. Id. By presenting such attenuated, unsupported
argument, King waives her complaints. See id.

 King offers no legal analysis and fails to cite any authority supporting her legal
insufficiency argument under Section 161.001(E). King also offers no legal analysis and
fails to cite any authority supporting the factual sufficiency issues. Accordingly, we find that
King has waived Issues No. Three, Five, Six, Seven and Eight. These Issues are overruled.

2. Legal Sufficiency Challenges


 In Issues No. One, Two and Four, King challenges the legal sufficiency of the jury's
finding of termination under Section 161.001(1)(C) and (D) and Section 161.003(a). The
jury had to determine whether King (1) voluntarily left R.K, K.K., J.J.S.B. and A.A.S.B. in
the possession of another without providing adequate support of the children and remained
away for a period of at least six months, or (2) knowingly placed or knowingly allowed the
children to remain in conditions or surroundings that endangered the physical or emotional
well-being of R.K, K.K., J.J.S.B. and A.A.S.B. See Tex. Fam. Code Ann. § 161.001(1)(C)
and (D). The jury also could have terminated King's rights under Section 161.003(a). The
only prong King challenges is the first one, "that she was suffering from a mental illness or
psychological disorder to the degree that she was incapable of caring for her four (4)
children."

 As noted previously, King does not challenge the trial court's finding that termination
was in the best interest of the children. Therefore, we will affirm if legally sufficient
evidence supports any of the grounds upon which her rights were terminated. If multiple
grounds for termination are alleged and the trial court submitted the termination issue using
a broad-form question asking the jury whether the parent-child relationship should be
terminated, the jury's finding will be upheld on any ground supporting the finding. Texas
Dep't of Human Services v. E.B., 802 S.W.2d 647, 649 (Tex. 1990) (op. on reh'g); In re P.R.,
994 S.W.2d 411, 415 (Tex. App.--Fort Worth 1999, pet. dism'd w.o.j.), disapproved on other
grounds by J.F.C., 96 S.W.3d 256. A finding of only one ground alleged under Section
161.001(1) is sufficient to support a judgment of termination. In re A.R.R., 61 S.W.3d 691,
698 (Tex. App.--Fort Worth 2001, pet. denied), disapproved on other grounds by In re A.V.,
46 Tex. Sup. Ct. J. 938, 113 S.W.3d 355 (2003) and In re C.H., 89 S.W.3d 17 (Tex. 2002).
Thus, to be successful on appeal, the Appellant must establish that the jury's findings on all
of the State's pleaded grounds are unsupported by the evidence. In re B.B., 971 S.W.2d 160,
163 (Tex. App.--Beaumont 1998, pet. denied), disapproved on other grounds by C.H., 89
S.W.3d 17; Ziegler v. Tarrant County Child Welfare Unit, 680 S.W.2d 674, 678 (Tex. App.--Fort Worth 1984, writ ref'd n.r.e.).

 In the case at bar, multiple grounds for termination were alleged and the trial court
submitted broad-form question asking the jury whether the parent-child relationship should
be terminated. Thus, the jury's finding will be upheld on any ground supporting the finding.
E.B., 802 S.W.2d at 649. The evidence reflected that King allowed the children to be
exposed to domestic violence. Allowing a child to be exposed to domestic violence is
sufficient evidence to support termination of parental rights under the endangerment ground.
In the Interest of J.R. and C.T., 991 S.W.2d 318, 322 (Tex. App.-- Fort Worth 1999, no pet.);
In the Interest of J.L.S., 793 S.W.2d 79, 82 (Tex. App.-- Corpus Christi 1990, no writ). 
Leland abused King in front of R.K. and K.K. King trained R.K. to take K.K. into the closet
whenever a fight would break out between she and Leland. Leland also abused both R.K.
and K.K. and King admitted that she never told anyone about the abuse. Babcock testified
that she began to suspect Leland was sexually abusing R.K. when R.K. was almost three
years old and that she informed King of her suspicions. King stayed with Leland despite her
mother's suspicions, but testified that she now believed Leland had sexually abused R.K. 

 Moreover, the evidence established that King was a drug user. Endangerment may
include evidence of drug addiction and its effect on a parent's life and her ability to parent.
In the Interest of U.P., 105 S.W.3d 222, 234 (Tex. App.-- Houston [14th Dist.] 2003, no
pet.). The use of drugs during pregnancy is conduct that endangers the physical and
emotional well-being of the child. In the Interest of W.A.B., 979 S.W.2d 804, 807-808 (Tex.
App.-- Houston [14th Dist.] 1998, pet. denied); Edwards v. Texas Dep't of Protective and
Regulatory Servs., 946 S.W.2d 130, 138 (Tex. App.-- El Paso 1997, no writ). King admitted
smoking marijuana and using other drugs. She admitted using drugs during her pregnancies
with K.K. and the twins. While pregnant with K.K., King told her doctor that she had
smoked marijuana the previous day and night, January 30, 1992. On February 2, 1992, King
tested positive for marijuana at Midland Memorial Hospital. King took another drug screen
on March 17, 1992, the day K.K. was born, and again tested positive for marijuana. 
A.A.S.B., the first-born twin, tested positive for marijuana at birth. 

 We have viewed the evidence in the light most favorable to the finding to determine
whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true. We find there is clear and convincing evidence to establish that King
knowingly placed or knowingly allowed the children to remain in conditions or surroundings
that endangered their physical or emotional well-being. Having found sufficient evidence
to support this ground for termination, we need not address the remaining statutory grounds. 
Issues No. One, Two, and Four are overruled.

C. Ineffective Assistance of Counsel

 The Texas Supreme Court recently held that the statutory right to counsel in
parental-rights termination cases embodies the right to effective counsel. In re M.S., 115
S.W.3d 534 (Tex. 2003). The court noted that "[i]t would seem a useless gesture on the one
hand to recognize the importance of counsel in termination proceedings, as evidenced by the
statutory right to appointed counsel, and, on the other hand, not require that counsel perform
effectively." Id. at 544 (citing In re K.L., 91 S.W.3d 1, 13 (Tex. App.--Fort Worth 2002, no
pet.)). The court also held that the appropriate standard for determining whether counsel is
effective should be the same as the standard applied in criminal cases--the standard set forth
by the United States Supreme Court in Strickland v. Washington. Id. at 545; Strickland, 466
U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). 

 In Strickland, the United States Supreme Court said: 

First, the defendant must show that counsel's performance was deficient.
This requires showing that counsel made errors so serious that counsel was
not functioning as the "counsel" guaranteed the defendant by the Sixth
Amendment. Second, the defendant must show that the deficient
performance prejudiced the defense. This requires showing that counsel's
errors were so serious as to deprive the defendant of a fair trial, a trial
whose result is reliable. 


Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Under Strickland, the defendant, to establish
an ineffective assistance claim, must successfully show both prongs of the inquiry.

 With respect to whether counsel's performance in a particular case is deficient, we
must take into account all of the circumstances surrounding the case, and must primarily
focus on whether counsel performed in a "reasonably effective" manner. Id. The Texas
Court of Criminal Appeals explained that counsel's performance falls below acceptable
levels of performance when the "representation is so grossly deficient as to render
proceedings fundamentally unfair . . . ." Brewer v. State, 649 S.W.2d 628, 630 (Tex. Crim.
App. 1983). In this process, we must give great deference to counsel's performance,
indulging "a strong presumption that counsel's conduct falls within the wide range of
reasonable professional assistance," including the possibility that counsel's actions are
strategic. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. It is only when "the conduct was so
outrageous that no competent attorney would have engaged in it," that the challenged conduct
will constitute ineffective assistance. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001); Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

 In Issue No. Nine, King asserts that the failure of her trial counsel to object to the
charge's submission of the termination of King's parental rights by broad-form question
deprived King of her statutory right to effective assistance of counsel.

1. Broad-Form Submission


 In all jury cases the court shall, whenever feasible, submit the cause upon broad-form
questions. Tex. R. Civ. P. 277. The charge in parental rights cases should be the same as in
other civil cases. Tex. Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990). The
controlling question is whether the parent-child relationship between the parent and child
should be terminated, not what specific ground or grounds under the controlling statute the
jury relied on to answer affirmatively the questions posed. Id. In so holding, the Supreme
Court approved both the instruction, which disjunctively submitted the alternative grounds
for termination, as well as the broad-form submission of the controlling issue: whether the
parent-child relationship should be terminated. Id.; In re M.C.M., 57 S.W.3d 27, 31 (Tex.
App.--Houston [1st Dist.] 2001, pet. denied); see In re J.M.C.A., 31 S.W.3d 692, 699 (Tex.
App.--Houston [1st Dist.] 2000, no pet.) (not necessary for trial court to submit separate
questions in parental termination case). 

 We are aware of a recent trend among practitioners to question the continued viability
of E.B. in the wake of Crown Life Insurance Co. v. Casteel, in which the Supreme Court held
that it is harmful error to submit to a jury a single broad form question that commingles valid
and invalid liability theories. Crown Life Insurance Co. v. Casteel, 22 S.W.3d 378, 389 (Tex.
2000). However, the Supreme Court has answered the question as it relates to ineffective
assistance of counsel in a termination proceeding, i.e., that counsel was ineffective for failure
to object to a broad form submission. In re J.F.C., 96 S.W.3d 256 (Tex. 2002). There, the
court concluded that in light of its decision in E.B., it could not be said that counsel's failure
to object fell outside the wide range of professionally competent assistance. Id. at 283. 
Although counsel could have raised the issue in the trial court so as to "ultimately implore
this Court to reconsider E.B., it is not outside the bounds of competency to follow a decision
of this court." Id. Given that J.F.C. postdates Casteel, we are constrained to agree. Thus,
we conclude that the failure of King's trial counsel to object to the broad-form submission
did not deprive King of her statutory right to effective assistance of counsel. Issue No. Nine
is overruled. 

 Having overruled all issues on appeal, we affirm the judgment of the trial court.

July 2, 2004




 RICHARD BARAJAS, Chief Justice


Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.