IN RE AW AND JK, CHILDREN

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-03-349-CV

IN THE INTEREST OF 

A.W. AND J.K., CHILDREN 

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant S.K., appeals from the trial court’s order terminating her parental rights to her children A.W. and J.K.  In two issues, Appellant challenges the legal and factual sufficiency of the evidence to support the statutory grounds for terminating her parental rights.  We affirm.

I.  Factual Background and Procedural History

Appellant was born on April 12, 1985.  A.W. was born on June 25, 2000, and J.K. was born on October 8, 2002.  Austin Wade is the biological father of A.W., and Vernon Elisher, Sr. is the biological father of J.K. 

This case was tried to the bench on November 11, 2003.  The evidence showed that the Texas Department of Family and Protective Services (TDFPS)
(footnote: 2) first became involved with Appellant in October 2002 when it received a referral alleging that Appellant was neglecting her children.  At that time, Appellant was living in Austin Wade’s home.  TDFPS investigator Traci Clary formed an opinion that drug activity was occurring at Appellant’s residence and that Appellant was under the influence of drugs.  According to Clary, Appellant admitted to having smoked marijuana two hours before Clary arrived.  Appellant also told Clary that she had used drugs at the same time she was pregnant with S.K., and she admitted to smoking two or three marijuana blunts
(footnote: 3) a day. Appellant tested positive for drugs on October 19, 2002. 

TDFPS developed a service plan and began offering services to Appellant.  At one point, Appellant entered into the Lighthouse Program, which is an inpatient program that allowed her to keep the children with her; however, she was discharged prematurely from the program because she left the facility on November 26, 2002 with an intent not to return, she verbally attacked several workers upon her return, and she was “a little rough with [A.W.] and [was] not really supervising her.”  When Appellant was discharged on December 11, 2002, TDFPS removed A.W. and J.K. and placed them with J.K.’s aunt, Retha Wilson.  Wilson testified that the children improved when they were placed in her care. 

As described in greater detail below, TDFPS provided other services to Appellant, but over the course of a year, Appellant did little to comply with the service plan.  Christiana Carr Smith, a CPS caseworker, testified that Appellant visited her children sporadically before July 1, 2003, but never called TDFPS to set up any visits after that point.  Appellant was not present at the trial, but she was represented by an attorney.
(footnote: 4)  After hearing and considering all of the evidence, the trial court determined that TDFPS had met its burden of proving by clear and convincing evidence that termination of Appellant’s rights was in the best interests of A.W. and J.K. and that TDFPS had established the family code’s environment, conduct, and constructive abandonment grounds for termination.
(footnote: 5)  
See
 
Tex. Fam. Code Ann
. § 161.001(1)(D), (E), (N) (Vernon 2002).  On December 22, 2003, the trial court made findings of fact and conclusions of law.

II.  Issues on Appeal

In her two issues, Appellant complains that the evidence is legally and factually insufficient to support the termination of her parental rights to A.W. and J.K.  TDFPS argues that Appellant’s briefing improperly fails to cite or otherwise attack any of the trial court’s findings of fact.  Thus, TDFPS maintains that the trial court’s unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the findings.  
See McGalliard v. Kuhlmann
, 722 S.W.2d 694, 696 (Tex. 1986); 
Mehan v. Wamco XXVIII, Ltd
., No. 2-03-119-CV, 2004 WL 742919, at *2 (Tex. App.—Fort Worth Apr. 8, 2004, no pet.).

While it is true that Appellant’s issues are broadly phrased and do not reference with specificity any of the trial court’s findings, it is clear from the substance of Appellant’s brief that she is challenging the legal and factual sufficiency of the evidence to support the trial court’s determination that TDFPS established the family code’s environment, conduct, and constructive abandonment grounds for termination.  
See 
Tex. Fam. Code Ann
. § 161.001(1)(D), (E), (N); 
Tex. R. App. P.
 38.1(e) (stating that appellate “point will be treated as covering every subsidiary question that is fairly included”); 
Zagorski v. Zagorski
, 116 S.W.3d 309, 315 n.2 (Tex. App.—Houston [14
th
 Dist.] 2003, pet. denied) (op. on reh’g) (rejecting argument that, because her points did not challenge specific findings of fact or conclusions of law, appellant waived her appellate argument).  Accordingly, we will examine the record under the applicable legal and factual sufficiency standards to determine whether the evidence supports the termination of her parental rights to A.W. and J.K. under grounds D, E, or N of the family code.
(footnote: 6)
III.  Termination of Parental Rights

A parent’s rights to “the companionship, care, custody[,] and management” of his or her children are constitutional interests “far more precious than any property right.”  
Santosky v. Kramer
, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982).  “While parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.”  
In re C.H.
, 89 S.W.3d 17, 26 (Tex. 2002).

In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child’s right to inherit.  T
EX
. F
AM
. C
ODE
 A
NN
. § 161.206(b) (Vernon Supp. 2004-05); 
Holick v. Smith
, 685 S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent.  
Holick,
 685 S.W.2d at 20-21;
 In re D.T.
, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh’g).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.  T
EX.
 F
AM.
 C
ODE
 A
NN.
 § 161.001; 
Richardson v. Green
, 677 S.W.2d 497, 499 (Tex. 1984); 
Swate v. Swate
, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).  Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact.  
Tex. Dep’t of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987).

A.  Burden of Proof

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by “clear and convincing evidence.”  T
EX
. F
AM
. C
ODE
 A
NN
. §§ 161.001, 161.206(a); 
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980).  This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.  
G.M.
, 596 S.W.2d at 847; 
D.T.
, 34 S.W.3d at 630.  It is defined as the “measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”  
Tex. Fam. Code Ann.
 § 101.007.

B.  Standard of Review

The higher burden of proof in termination cases alters the appellate standard of legal sufficiency review.  
In re J.F.C.
, 96 S.W.3d 256, 265 (Tex. 2002).  The traditional no-evidence standard does not adequately protect the parent‘s constitutional interests.  
Id. 
 In reviewing the evidence for legal sufficiency in parental termination cases, we must determine “whether the evidence is such that a factfinder could reasonably form a firm belief or conviction” that the grounds for termination were proven.  
Id
. at 265-66.  We must review all the evidence in the light most favorable to the finding and judgment.  
Id.
 at 266.  This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so.  
Id.
  We must also disregard all evidence that a reasonable factfinder could have disbelieved.  
Id.
  We must consider, however, undisputed evidence even if it does not support the finding.  
Id.
  

The higher burden of proof in termination cases also alters the appellate standard of factual sufficiency review.  
In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002).  “[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.”  
Id
.  In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine “whether the evidence is such that a factfinder could reasonably form a firm belief or conviction” that the grounds for termination were proven.  
Id
.  Our inquiry here is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that Appellant violated section 161.001(1)(D), (E), or (N).  
Id
. at 28.

C.  Constructive Abandonment

Appellant challenges the legal and factual sufficiency of the evidence with respect to the constructive abandonment ground for termination.  To establish constructive abandonment under section 161.001(1)(N), TDFPS must prove by clear and convincing evidence that (1) Appellant constructively abandoned A.W. and J.K. who had been in the temporary managing conservatorship of TDFPS for not less than six months, (2) TDFPS made reasonable efforts to return A.W. and J.K. to Appellant, (3) Appellant has not regularly visited or maintained significant contact with A.W. and J.K., and (4) Appellant has demonstrated an inability to provide A.W. and J.K. with a safe environment.  
Tex. Fam. Code Ann.
 § 161.001(1)(N); 
In re J.J.O
., 131 S.W.3d 618, 628 (Tex. App.—Fort Worth 2004, no pet.).

On the first element, the record indisputably shows that A.W. and J.K. were removed from Appellant on December 11, 2002 and were thereafter placed in the temporary managing conservatorship of TDFPS.  As to the second element, whether TDFPS made reasonable efforts to return A.W. and J.K. to Appellant, she acknowledges that TDFPS offered the required services to her, but Appellant asserts that the record is “virtually silent on actual efforts made to return the children to her.”  Before A.W. and J.K. were removed from Appellant, TDFPS tried to get Appellant treatment for her drug problem.  Appellant was too young for some of the services TDFPS initially found for her, and she refused treatment through the Texas Youth Recovery Commission because she would have been separated from her children.  As noted above, Appellant received inpatient treatment and was able to be with her children at the Lighthouse Program, but she was discharged from the program on December 11, 2002 before she had completed it. 

When A.W. and J.K. were removed from Appellant on December 11, 2002, TDFPS set up a service plan to assist Appellant.  CPS caseworker Smith testified that Appellant “made an attempt” to comply with the service plan, “but she never followed through.”  According to Smith, TDFPS set up parenting classes for Appellant, and Appellant did not complete them.  TDFPS found two drug rehabilitation programs for Appellant, but Appellant never followed through with those programs and did not receive available treatment.  On October 21, 2003, less than a month before her trial began, Appellant refused a requested urinalysis.  Smith also set up individual counseling and psychological testing. Smith testified that the only service that Appellant completed was the “psychological.” 

With respect to the third element, whether Appellant regularly visited or maintained significant contact with A.W. and J.K. once they were placed in foster care, caseworker Smith characterized Appellant’s visits with her two children between December 11, 2002 and July 2003 as “periodic” and “sporadic.”  Smith testified that TDFPS was “unsure if she would show up.”  Appellant visited her children at the CPS offices on July 1 and on July 29, but thereafter Appellant did not visit her children at the CPS offices.  Smith testified that Appellant never called to set up any other visits, which TDFPS would have arranged if they had been requested.  Smith stated that the last time she had been in contact with Appellant was on October 21, 2003, when Appellant came by the office looking for her birth certificate.  Smith further testified that Appellant was with a new boyfriend, said she had not seen Austin Wade since “he had shot at her,” only “seemed concerned about getting her birth certificate,” and did not ask about her children. 

Smith acknowledged that Appellant unintentionally saw her children once or twice when Retha Wilson, who is J.K.’s aunt, had taken them to visit A.W.’s paternal great-grandmother and Appellant happened to be at her house.  Wilson testified that Appellant only came by her house on two occasions:  once during A.W.’s and J.K.’s “nap time” on October 7, 2003, the day before J.K.’s first birthday, and again about a week before trial to see if Wilson had information about Social Security and birth certificates.  According to Wilson, “when [Appellant] came back the second time, I felt like she just wanted the information; she didn’t come to see the girls.” 

Finally, we examine the evidence concerning the fourth element for constructive abandonment, whether Appellant demonstrated an inability to provide A.W. and J.K. with a safe environment.  Appellant, by her own admission, uses marijuana and has not taken advantage of the various opportunities made available to her to seek treatment for drug abuse or for parenting in general.  TDFPS employee Rosalyn Hubbard testified that if the children had gone back to the home of Austin Wade, they would have been exposed to a “drug environment,” which would have been a dangerous situation.  During the time A.W. and J.K. were removed from Appellant, she was arrested on two counts of prostitution, both to which she pleaded no contest and was sentenced to forty-five days’ confinement (to be served concurrently).  She failed to take a requested drug test on October 21, 2003. Sometime after October 2002, Vernon Elisher, Sr. was arrested and ultimately imprisoned for a parole violation.  According to TDFPS investigator Clary, Elisher’s parole was revoked because he was around forty years old and had slept with Appellant (and fathered J.K.) when Appellant was only sixteen. In November 2003, Elisher signed an affidavit relinquishing his parental rights. 

At the time Clary began investigating Appellant, Austin Wade, with whom Appellant was living, was on juvenile parole for aggravated assault.  Wade admitted to Clary that he smokes marijuana.  Moreover, during the termination proceedings, TDFPS offered into evidence Wade’s November 2001 guilty plea and conviction of the offense of terroristic threat, his January 2003 guilty plea and conviction of the offense of burglary of a vehicle, and his January 2003 guilty plea and conviction of the offense of evading arrest.  Further, Appellant admitted to caseworker Smith that the last time she saw Wade, he shot at her. Hubbard testified that J.K. had ringworm at one point and that Appellant would not take her to get treatment.  Wilson testified that when the children came to her, A.W. “had ringworms real bad.”  Wilson testified that they had regularly gone to the doctor, and that the ringworm problem was “now under control,” but that “her hair is not growing back yet so now we’re working on getting her hair back.” 

Wilson also testified that A.W. used to cry all the time and had nightmares when she first arrived.  Wilson said that with lots of love and affection, A.W. was “doing much better.”  She also testified that, while J.K. was not yet walking at thirteen months, she was “doing real good.”  Overall, Wilson said that, since coming to live with her, A.W. and J.K. were in good health.  As late as October 21, 2003, caseworker Smith and Wilson both portrayed Appellant as caring more about obtaining copies of her own birth certificate than about her two children. 

We have carefully reviewed the entire record, and under the applicable standards of review, we hold that the State established by clear and convincing evidence that Appellant constructively abandoned A.W. and J.K. under family code section 161.001(1)(N).  
See
 
J.F.C.
, 96 S.W.3d at 265-66; 
C.H.
, 89 S.W.3d at 25; 
see, e.g., J.J.O.
, 131 S.W.3d at 630 (holding evidence was legally and factually sufficient to support constructive abandonment); 
In re H.R.
, 87 S.W.3d 691, 699 (Tex. App.—San Antonio 2002, no pet.) (same); 
In re P.R
., 994 S.W.2d 411, 416 (Tex. App.—Fort Worth 1999, pet. dism’d w.o.j.) (holding evidence sufficient to support constructive abandonment finding where mother sporadically visited child, used drugs, and failed to comply with service plan), 
disapproved of on other grounds by J.F.C
., 96 S.W.3d at 267.  We overrule Appellant’s first and second issues.

Appellant challenges the legal and factual sufficiency of all three of the statutory grounds for termination pleaded by TDPRS.  However, only one finding under section 161.001(1) is necessary to support a judgment of termination.  
Tex. Fam. Code Ann.
 § 161.001(1); 
J.J.O
., 131 S.W.3d at 630; 
In re D.M.
, 58 S.W.3d 801, 813 (Tex. App.—Fort Worth 2001, no pet.); 
see also Tex. Dep't of Human Servs. v. E.B.,
 802 S.W.2d 647, 649 (Tex. 1990) (op. on reh’g).  Accordingly, because we conclude there is both legally and factually sufficient evidence to support the trial court’s finding under family code section 161.001(1)(N), we need not address Appellant’s remaining points with respect to the trial court’s findings under section 161.001, subsections D and E.  
See
 
Tex. Fam. Code Ann. 
§ 161.001(1)(D), (E), (N); 
Tex. R. App. P.
 47.1; 
J.J.O
., 131 S.W.3d at 630.

Further, Appellant presents no argument or authority that the evidence was legally or factually insufficient to support the trial court’s finding that it was in A.W.’s or J.K.’s best interest that Appellant’s parental rights be terminated.  
See
 
Tex. Fam. Code Ann. 
§ 161.001(2); 
Tex. R. App. P
. 38.1(h).  Thus, Appellant has waived any “in the child’s best interest” argument, and we need not address the trial court’s findings under section 161.001(2) that termination of Appellant’s rights to A.W. and J.K. are in each child’s best interest.  
See
 
Tex. Fam. Code Ann. 
§ 161.001(2); 
Tex. R. App. P.
 38.1(h).

IV.  Conclusion

Having overruled both of Appellant’s issues, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  August 12, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Effective February 1, 2004, the legislature renamed the Texas Department of Protective and Regulatory Services (TDPRS) as the Texas Department of Family and Protective Services (TDFPS). 
See
 Act of June 6, 2003, 78
th
 Leg., R.S., H.B. 2292, §§ 1.27, 1.29(b) (stating that a reference in law to TDPRS also means TDFPS and providing the effective date of the name change).  In this opinion, we will use TDFPS as the agency name.

3:
A blunt is a hollowed-out cigar filled with marijuana.  
Jackson v. State
, 94 S.W.3d 46, 47 (Tex. App.—Tyler 2002, pet. ref’d); 
Lassaint v. State
, 79 S.W.3d 736, 742 n.7 (Tex. App.—Corpus Christi 2002, no pet.).

4:
Vernon Elisher, Sr. testified that he did not know how to contact Appellant because he did not have her current address or phone number.  Appellant’s trial counsel also stated that she had last contacted Appellant in August 2003.  Counsel represented to the court that she had previously asked for Appellant’s current address, which Appellant failed to provide her, and that she had been unable to reach her since. 

5:
The trial court also terminated Austin Wade’s rights to A.W. and Vernon Elisher, Sr.’s rights to J.K.  Neither father is a party to this appeal. 

6:
Appellant, however, does not dispute the trial court’s finding that termination of her parental rights is in the best interest of the children.