COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-349-CV
  
  
   
IN THE INTEREST OF
  
   
   
A.W. AND J.K., CHILDREN
  
   
------------
 
FROM THE 323RD DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
S.K., appeals from the trial court’s order terminating her parental rights to 
her children A.W. and J.K.  In two issues, Appellant challenges the legal 
and factual sufficiency of the evidence to support the statutory grounds for 
terminating her parental rights.  We affirm.
I. Factual Background and Procedural History
        Appellant 
was born on April 12, 1985.  A.W. was born on June 25, 2000, and J.K. was 
born on October 8, 2002. Austin Wade is the biological father of A.W., and 
Vernon Elisher, Sr. is the biological father of J.K.
        This 
case was tried to the bench on November 11, 2003. The evidence showed that the 
Texas Department of Family and Protective Services (TDFPS)[2] 
first became involved with Appellant in October 2002 when it received a referral 
alleging that Appellant was neglecting her children.  At that time, 
Appellant was living in Austin Wade’s home.  TDFPS investigator Traci 
Clary formed an opinion that drug activity was occurring at Appellant’s 
residence and that Appellant was under the influence of drugs.  According 
to Clary, Appellant admitted to having smoked marijuana two hours before Clary 
arrived.  Appellant also told Clary that she had used drugs at the same 
time she was pregnant with S.K., and she admitted to smoking two or three 
marijuana blunts[3] a day.  Appellant tested 
positive for drugs on October 19, 2002.
        TDFPS 
developed a service plan and began offering services to Appellant.  At one 
point, Appellant entered into the Lighthouse Program, which is an inpatient 
program that allowed her to keep the children with her; however, she was 
discharged prematurely from the program because she left the facility on 
November 26, 2002 with an intent not to return, she verbally attacked several 
workers upon her return, and she was “a little rough with [A.W.] and [was] not 
really supervising her.”  When Appellant was discharged on December 11, 
2002, TDFPS removed A.W. and J.K. and placed them with J.K.’s aunt, Retha 
Wilson.  Wilson testified that the children improved when they were placed 
in her care.
        As 
described in greater detail below, TDFPS provided other services to Appellant, 
but over the course of a year, Appellant did little to comply with the service 
plan.  Christiana Carr Smith, a CPS caseworker, testified that Appellant 
visited her children sporadically before July 1, 2003, but never called TDFPS to 
set up any visits after that point.  Appellant was not present at the 
trial, but she was represented by an attorney.[4]  
After hearing and considering all of the evidence, the trial court determined 
that TDFPS had met its burden of proving by clear and convincing evidence that 
termination of Appellant’s rights was in the best interests of A.W. and J.K. 
and that TDFPS had established the family code’s environment, conduct, and 
constructive abandonment grounds for termination.[5]  
See Tex. Fam. Code Ann. § 
161.001(1)(D), (E), (N) (Vernon 2002).  On December 22, 2003, the trial 
court made findings of fact and conclusions of law.
II. Issues on Appeal
        In 
her two issues, Appellant complains that the evidence is legally and factually 
insufficient to support the termination of her parental rights to A.W. and J.K. 
TDFPS argues that Appellant’s briefing improperly fails to cite or otherwise 
attack any of the trial court’s findings of fact.  Thus, TDFPS maintains 
that the trial court’s unchallenged findings of fact are binding unless the 
contrary is established as a matter of law or there is no evidence to support 
the findings.  See McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 
1986); Mehan v. Wamco XXVIII, Ltd., No. 2-03-119-CV, 2004 WL 742919, at 
*2 (Tex. App.—Fort Worth Apr. 8, 2004, no pet.).
        While 
it is true that Appellant’s issues are broadly phrased and do not reference 
with specificity any of the trial court’s findings, it is clear from the 
substance of Appellant’s brief that she is challenging the legal and factual 
sufficiency of the evidence to support the trial court’s determination that 
TDFPS established the family code’s environment, conduct, and constructive 
abandonment grounds for termination.  See Tex. Fam. Code Ann. § 161.001(1)(D), 
(E), (N); Tex. R. App. P. 38.1(e) 
(stating that appellate “point will be treated as covering every subsidiary 
question that is fairly included”); Zagorski v. Zagorski, 116 S.W.3d 
309, 315 n.2 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) 
(op. on reh’g) (rejecting argument that, because her points did not challenge 
specific findings of fact or conclusions of law, appellant waived her appellate 
argument).  Accordingly, we will examine the record under the applicable 
legal and factual sufficiency standards to determine whether the evidence 
supports the termination of her parental rights to A.W. and J.K. under grounds 
D, E, or N of the family code.[6]
III. Termination of Parental Rights
        A 
parent’s rights to “the companionship, care, custody[,] and management” of 
his or her children are constitutional interests “far more precious than any 
property right.”  Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S. 
Ct. 1388, 1397 (1982).  “While parental rights are of constitutional 
magnitude, they are not absolute.  Just as it is imperative for courts to 
recognize the constitutional underpinnings of the parent-child relationship, it 
is also essential that emotional and physical interests of the child not be 
sacrificed merely to preserve that right.”  In re C.H., 89 S.W.3d 
17, 26 (Tex. 2002).
        In 
a termination case, the State seeks not just to limit parental rights but to end 
them permanently—to divest the parent and child of all legal rights, 
privileges, duties, and powers normally existing between them, except for the 
child’s right to inherit.  TEX. FAM. CODE ANN. § 161.206(b) (Vernon Supp. 2004-05); Holick 
v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize 
termination proceedings and strictly construe involuntary termination statutes 
in favor of the parent.  Holick, 685 S.W.2d at 20-21; In re D.T., 
34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh’g).
        In 
proceedings to terminate the parent-child relationship brought under section 
161.001 of the family code, the petitioner must establish one or more of the 
acts or omissions enumerated under subdivision (1) of the statute and must also 
prove that termination is in the best interest of the child.  TEX. FAM. CODE ANN. § 
161.001; Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Swate 
v. Swate, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).  
Both elements must be established; termination may not be based solely on the 
best interest of the child as determined by the trier of fact.  Tex. 
Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).
        A. 
Burden of Proof
        Termination 
of parental rights is a drastic remedy and is of such weight and gravity that 
due process requires the petitioner to justify termination by “clear and 
convincing evidence.” TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); In re G.M., 
596 S.W.2d 846, 847 (Tex. 1980). This intermediate standard falls between the 
preponderance standard of ordinary civil proceedings and the reasonable doubt 
standard of criminal proceedings. G.M., 596 S.W.2d at 847; D.T., 
34 S.W.3d at 630. It is defined as the “measure or degree of proof that will 
produce in the mind of the trier of fact a firm belief or conviction as to the 
truth of the allegations sought to be established.” Tex. Fam. Code Ann. § 101.007.
        B. 
Standard of Review
        The 
higher burden of proof in termination cases alters the appellate standard of 
legal sufficiency review. In re J.F.C., 96 S.W.3d 256, 265 (Tex. 2002). 
The traditional no-evidence standard does not adequately protect the parent‘s 
constitutional interests. Id. In reviewing the evidence for legal 
sufficiency in parental termination cases, we must determine “whether the 
evidence is such that a factfinder could reasonably form a firm belief or 
conviction” that the grounds for termination were proven. Id. at 
265-66. We must review all the evidence in the light most favorable to the 
finding and judgment. Id. at 266. This means that we must assume that the 
factfinder resolved any disputed facts in favor of its finding if a reasonable 
factfinder could have done so. Id. We must also disregard all evidence 
that a reasonable factfinder could have disbelieved. Id. We must 
consider, however, undisputed evidence even if it does not support the finding. Id.
        The 
higher burden of proof in termination cases also alters the appellate standard 
of factual sufficiency review. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). 
“[A] finding that must be based on clear and convincing evidence cannot be 
viewed on appeal the same as one that may be sustained on a mere 
preponderance.” Id. In considering whether the evidence of termination 
rises to the level of being clear and convincing, we must determine “whether 
the evidence is such that a factfinder could reasonably form a firm belief or 
conviction” that the grounds for termination were proven. Id. Our 
inquiry here is whether, on the entire record, a factfinder could reasonably 
form a firm conviction or belief that Appellant violated section 161.001(1)(D), 
(E), or (N). Id. at 28.
        C. 
Constructive Abandonment
        Appellant 
challenges the legal and factual sufficiency of the evidence with respect to the 
constructive abandonment ground for termination. To establish constructive 
abandonment under section 161.001(1)(N), TDFPS must prove by clear and 
convincing evidence that (1) Appellant constructively abandoned A.W. and J.K. 
who had been in the temporary managing conservatorship of TDFPS for not less 
than six months, (2) TDFPS made reasonable efforts to return A.W. and J.K. to 
Appellant, (3) Appellant has not regularly visited or maintained significant 
contact with A.W. and J.K., and (4) Appellant has demonstrated an inability to 
provide A.W. and J.K. with a safe environment.  Tex. Fam. Code Ann. § 161.001(1)(N); In 
re J.J.O., 131 S.W.3d 618, 628 (Tex. App.—Fort Worth 2004, no pet.).
        On 
the first element, the record indisputably shows that A.W. and J.K. were removed 
from Appellant on December 11, 2002 and were thereafter placed in the temporary 
managing conservatorship of TDFPS. As to the second element, whether TDFPS made 
reasonable efforts to return A.W. and J.K. to Appellant, she acknowledges that 
TDFPS offered the required services to her, but Appellant asserts that the 
record is “virtually silent on actual efforts made to return the children to 
her.” Before A.W. and J.K. were removed from Appellant, TDFPS tried to get 
Appellant treatment for her drug problem. Appellant was too young for some of 
the services TDFPS initially found for her, and she refused treatment through 
the Texas Youth Recovery Commission because she would have been separated from 
her children. As noted above, Appellant received inpatient treatment and was 
able to be with her children at the Lighthouse Program, but she was discharged 
from the program on December 11, 2002 before she had completed it.
        When 
A.W. and J.K. were removed from Appellant on December 11, 2002, TDFPS set up a 
service plan to assist Appellant. CPS caseworker Smith testified that Appellant 
“made an attempt” to comply with the service plan, “but she never followed 
through.”  According to Smith, TDFPS set up parenting classes for 
Appellant, and Appellant did not complete them.  TDFPS found two drug 
rehabilitation programs for Appellant, but Appellant never followed through with 
those programs and did not receive available treatment.  On October 21, 
2003, less than a month before her trial began, Appellant refused a requested 
urinalysis.  Smith also set up individual counseling and psychological 
testing. Smith testified that the only service that Appellant completed was the 
“psychological.”
        With 
respect to the third element, whether Appellant regularly visited or maintained 
significant contact with A.W. and J.K. once they were placed in foster care, 
caseworker Smith characterized Appellant’s visits with her two children 
between December 11, 2002 and July 2003 as “periodic” and 
“sporadic.”  Smith testified that TDFPS was “unsure if she would show 
up.” Appellant visited her children at the CPS offices on July 1 and on July 
29, but thereafter Appellant did not visit her children at the CPS offices. 
Smith testified that Appellant never called to set up any other visits, which 
TDFPS would have arranged if they had been requested.  Smith stated that 
the last time she had been in contact with Appellant was on October 21, 2003, 
when Appellant came by the office looking for her birth certificate. Smith 
further testified that Appellant was with a new boyfriend, said she had not seen 
Austin Wade since “he had shot at her,” only “seemed concerned about 
getting her birth certificate,” and did not ask about her children.
        Smith 
acknowledged that Appellant unintentionally saw her children once or twice when 
Retha Wilson, who is J.K.’s aunt, had taken them to visit A.W.’s paternal 
great-grandmother and Appellant happened to be at her house. Wilson testified 
that Appellant only came by her house on two occasions: once during A.W.’s and 
J.K.’s “nap time” on October 7, 2003, the day before J.K.’s first 
birthday, and again about a week before trial to see if Wilson had information 
about Social Security and birth certificates. According to Wilson, “when 
[Appellant] came back the second time, I felt like she just wanted the 
information; she didn’t come to see the girls.”
        Finally, 
we examine the evidence concerning the fourth element for constructive 
abandonment, whether Appellant demonstrated an inability to provide A.W. and J.K. 
with a safe environment. Appellant, by her own admission, uses marijuana and has 
not taken advantage of the various opportunities made available to her to seek 
treatment for drug abuse or for parenting in general. TDFPS employee Rosalyn 
Hubbard testified that if the children had gone back to the home of Austin Wade, 
they would have been exposed to a “drug environment,” which would have been 
a dangerous situation. During the time A.W. and J.K. were removed from 
Appellant, she was arrested on two counts of prostitution, both to which she 
pleaded no contest and was sentenced to forty-five days’ confinement (to be 
served concurrently). She failed to take a requested drug test on October 21, 
2003.
        Sometime 
after October 2002, Vernon Elisher, Sr. was arrested and ultimately imprisoned 
for a parole violation. According to TDFPS investigator Clary, Elisher’s 
parole was revoked because he was around forty years old and had slept with 
Appellant (and fathered J.K.) when Appellant was only sixteen. In November 2003, 
Elisher signed an affidavit relinquishing his parental rights.
        At 
the time Clary began investigating Appellant, Austin Wade, with whom Appellant 
was living, was on juvenile parole for aggravated assault. Wade admitted to 
Clary that he smokes marijuana. Moreover, during the termination proceedings, 
TDFPS offered into evidence Wade’s November 2001 guilty plea and conviction of 
the offense of terroristic threat, his January 2003 guilty plea and conviction 
of the offense of burglary of a vehicle, and his January 2003 guilty plea and 
conviction of the offense of evading arrest. Further, Appellant admitted to 
caseworker Smith that the last time she saw Wade, he shot at her.
        Hubbard 
testified that J.K. had ringworm at one point and that Appellant would not take 
her to get treatment. Wilson testified that when the children came to her, A.W. 
“had ringworms real bad.” Wilson testified that they had regularly gone to 
the doctor, and that the ringworm problem was “now under control,” but that 
“her hair is not growing back yet so now we’re working on getting her hair 
back.”
        Wilson 
also testified that A.W. used to cry all the time and had nightmares when she 
first arrived. Wilson said that with lots of love and affection, A.W. was 
“doing much better.” She also testified that, while J.K. was not yet walking 
at thirteen months, she was “doing real good.” Overall, Wilson said that, 
since coming to live with her, A.W. and J.K. were in good health. As late as 
October 21, 2003, caseworker Smith and Wilson both portrayed Appellant as caring 
more about obtaining copies of her own birth certificate than about her two 
children.
        We 
have carefully reviewed the entire record, and under the applicable standards of 
review, we hold that the State established by clear and convincing evidence that 
Appellant constructively abandoned A.W. and J.K. under family code section 
161.001(1)(N). See J.F.C., 96 S.W.3d at 265-66; C.H., 89 
S.W.3d at 25; see, e.g., J.J.O., 131 S.W.3d at 630 (holding evidence was 
legally and factually sufficient to support constructive abandonment); In re 
H.R., 87 S.W.3d 691, 699 (Tex. App.—San Antonio 2002, no pet.) (same); In 
re P.R., 994 S.W.2d 411, 416 (Tex. App.—Fort Worth 1999, pet. dism’d 
w.o.j.) (holding evidence sufficient to support constructive abandonment finding 
where mother sporadically visited child, used drugs, and failed to comply with 
service plan), disapproved of on other grounds by J.F.C., 96 S.W.3d at 
267. We overrule Appellant’s first and second issues.
        Appellant 
challenges the legal and factual sufficiency of all three of the statutory 
grounds for termination pleaded by TDPRS. However, only one finding under 
section 161.001(1) is necessary to support a judgment of termination. Tex. Fam. Code Ann. § 161.001(1); J.J.O., 
131 S.W.3d at 630; In re D.M., 58 S.W.3d 801, 813 (Tex. App.—Fort Worth 
2001, no pet.); see also Tex. Dep't of Human Servs. v. E.B., 802 S.W.2d 
647, 649 (Tex. 1990) (op. on reh’g). Accordingly, because we conclude there is 
both legally and factually sufficient evidence to support the trial court’s 
finding under family code section 161.001(1)(N), we need not address 
Appellant’s remaining points with respect to the trial court’s findings 
under section 161.001, subsections D and E. See Tex. Fam. Code Ann. § 161.001(1)(D), 
(E), (N); Tex. R. App. P. 47.1; J.J.O., 
131 S.W.3d at 630.
        Further, 
Appellant presents no argument or authority that the evidence was legally or 
factually insufficient to support the trial court’s finding that it was in 
A.W.’s or J.K.’s best interest that Appellant’s parental rights be 
terminated. See Tex. Fam. Code 
Ann. § 161.001(2); Tex. R. App. P. 
38.1(h). Thus, Appellant has waived any “in the child’s best interest” 
argument, and we need not address the trial court’s findings under section 
161.001(2) that termination of Appellant’s rights to A.W. and J.K. are in each 
child’s best interest. See Tex. 
Fam. Code Ann. § 161.001(2); Tex. 
R. App. P. 38.1(h).
IV. Conclusion
        Having 
overruled both of Appellant’s issues, we affirm the trial court’s judgment.
  
  
                                                                  ANNE 
GARDNER
                                                                  JUSTICE
   

  
PANEL B:   DAUPHINOT, 
HOLMAN, and GARDNER, JJ.
DELIVERED: August 12, 2004


NOTES
1.  See 
Tex. R. App. P. 47.4.
2.  
Effective February 1, 2004, the legislature renamed the Texas Department of 
Protective and Regulatory Services (TDPRS) as the Texas Department of Family and 
Protective Services (TDFPS).  See Act of June 6, 2003, 78th 
Leg., R.S., H.B. 2292, §§ 1.27, 1.29(b) (stating that a reference in law to 
TDPRS also means TDFPS and providing the effective date of the name 
change).  In this opinion, we will use TDFPS as the agency name.
3.  A blunt is a 
hollowed-out cigar filled with marijuana. Jackson v. State, 94 S.W.3d 46, 
47 (Tex. App.—Tyler 2002, pet. ref’d); Lassaint v. State, 79 S.W.3d 
736, 742 n.7 (Tex. App.—Corpus Christi 2002, no pet.).
4.  
Vernon Elisher, Sr. testified that he did not know how to contact Appellant 
because he did not have her current address or phone number.  Appellant’s 
trial counsel also stated that she had last contacted Appellant in August 2003. 
Counsel represented to the court that she had previously asked for Appellant’s 
current address, which Appellant failed to provide her, and that she had been 
unable to reach her since.
5.  The 
trial court also terminated Austin Wade’s rights to A.W. and Vernon Elisher, 
Sr.’s rights to J.K.  Neither father is a party to this appeal.
6.  
Appellant, however, does not dispute the trial court’s finding that 
termination of her parental rights is in the best interest of the children.