**In the Interest of C.D. and B.P., Children**

No. 2–97–020–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 8, 1998.

Andrew Ottaway, Haskell, Edwin J. Seilheimer, Granbury, for Appellant.

Vincent Messina, Granbury, for Appellee.

Before LIVINGSTON, RICHARDS and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

This is an appeal from an involuntary termination of parental rights case brought by the Texas Department of Protective and Regulatory Services ("T.D.P.R.S.") that terminated the parental rights of Cherlyn Dixon to her daughters, C.D. and B.P. Dixon contends that the trial court erred by allowing certain testimony as evidence and erred by denying her motion for judgment n.o.v. and motion for new trial because there was no, or insufficient, evidence to support the jury's answers to the special questions. Because admission of the testimony and denial of Dixon's motion for judgment n.o.v. and motion for new trial was not error, we affirm the trial court's judgment.

## Background

The T.D.P.R.S. sought and received an emergency order to take custody of the children in 1994 and filed suit for termination of Dixon's parental rights in 1995. Before trial, Dixon filed and served the T.D.P.R.S. with interrogatories requesting the names of persons with relevant information and the names of experts. Because this case involved the interests of the children, an attorney ad litem was appointed for them. Dixon did not file and serve any interrogatories on the children's attorney ad litem.

During trial, the attorney ad litem called two witnesses, an employee of the T.D.P.R.S. and an expert on contract with the department. The T.D.P.R.S. had not designated either witness in their response to Dixon's interrogatories. Dixon objected that the failure of the T.D.P.R.S. to designate the witnesses in their response to interrogatories precluded the T.D.P.R.S. from asking the attorney ad litem to introduce these witnesses to support the State's case. The attorney ad litem responded that the witnesses would be relevant to his recommendation for termination of Dixon's rights. The trial court overruled Dixon's objection.

The jury found for the T.D.P.R.S. on each ground and that termination was in the best interests of the children. Dixon made motions for judgment n.o.v. and for new trial based on no evidence and insufficiency of the evidence to support the jury's findings on the submitted special issues. These motions were denied, and Dixon now appeals the involuntary termination.

## Standard of Review

■ In proceedings to terminate the parent-child relationship brought under section 161.001 of the Family Code, the petitioner must establish by clear and convincing evidence one or more of the acts or omissions enumerated under subdivision (1) of the statute and must additionally prove, as required under subdivision (2), that termination of the parent-child relationship is in the best interest of the child. TEX.FAM.CODE ANN. § 161.001 (Vernon 1996); *see Richardson v. Green*, 677 S.W.2d 497, 499 (Tex.1984). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *See Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987).

■ In determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *See In re W.S.*, 899 S.W.2d 772, 776 (Tex.App.—Fort Worth 1995, no writ). A "no evidence" point of error may only be sustained when the record discloses one of the following: 1) a complete absence of evidence of a vital fact; 2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; 3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or 4) the evidence establishes conclusively the opposite of a vital fact. *See id.* at 775–76 (citing *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990)).

■ Termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent. *See In re A.V.*, 849 S.W.2d 393, 400 (Tex.App.—Fort Worth 1993, writ denied). The burden of proof by clear and convincing evidence in the trial court does not alter the appellate standard of review for

factual sufficiency. *See Faram v. Gervitz,* 895 S.W.2d 839, 843 (Tex.App.—Fort Worth 1995, no writ) (rejecting the "intermediate standard of appellate review" in cases involving the clear-and-convincing burden of proof). Accordingly, to prevail on an assertion that the evidence supporting the termination of parental rights is "factually insufficient," the evidence supporting the finding must be so weak or the evidence to the contrary must be so overwhelming that the finding should be set aside and a new trial ordered. *See Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

### Disclosure of Witnesses

■ Dixon argues on appeal that to allow the attorney ad litem to call witnesses that support the State's position on termination, when these witnesses were employed by the State and not designated by the State in response to Dixon's interrogatories, subverts the purpose of civil procedure rule 215(5). Rule 215(5) prevents a *party* from presenting undisclosed evidence it was under a duty to provide, or to offer testimony of an undisclosed expert or any other person with knowledge of a discoverable matter. TEX. R.CIV.P. 215(5).

As the trial court here aptly stated:

I sympathize with [Dixon's trial counsel]. I do think that he's been somewhat taken advantage of. However, when there's an Ad Litem, the whole purpose of appointing an Ad Litem to represent the children is to have someone here who is having their interest at heart, and not either one— neither the Child Protective Services or the respondents. And you have to anticipate that they can be able to call witnesses if they're going to adequately protect their—the children's interest. So, I mean, I can see what's happened, but that could have been avoided by sending out [a] discovery request to the Ad Litem.

Dixon did not send a discovery request to the ad litem. Because there was no discovery request to the ad litem, who represented a *party* (the children), the ad litem had no duty to disclose the evidence he would use or witnesses he would call. Therefore, nothing prevented the ad litem from calling witnesses whose testimony was relevant to the best interest of the children, even if the State could not have called them due to its failure to disclose. Dixon's first issue is overruled.

### No Evidence and Insufficient Evidence

Dixon asserts there was no, or insufficient, evidence to support the jury's answers to special questions 1.a.1, 1.a.2, 1.b.1, and 2.a. Special question 1.a.1 required the jury to answer whether Dixon had knowingly placed or knowingly allowed C.D. to remain in conditions or surroundings that endangered her physical or emotional well-being.

The record reflects that Dixon's ex-husband testified that Dixon consumed up to a six-pack of beer a day and used marijuana and speed. Dixon was out with friends and was arrested on outstanding warrants, leaving the baby, C.D., alone at a friend's house overnight. A Child Protective Services investigator testified that C.D. was left in a motel with six adults who were drinking beer, that C.D. appeared dirty and had insect bites, and that the room was soiled with cat litter in the living area. The investigator further testified that the motel was known for drugs, alcohol, and murders.

Special question 1.a.2 inquired whether Dixon engaged in conduct or knowingly placed C.D. with persons who engaged in conduct which endangered her physical or emotional well-being. Dixon admitted to being arrested for possession of marijuana while she was pregnant with C.D. Dixon stated that when she was arrested for outstanding warrants she had to leave the child with her common-law husband and then her mother. Dixon's ex-husband also testified that Dixon drove under the influence of alcohol with C.D. in the car.

Special question 1.b.1 asked whether Dixon engaged in conduct or knowingly placed B.P. with persons who engaged in conduct that endangered her physical or emotional well-being. Dixon admitted to consuming alcohol during her pregnancy with B.P. Dixon's ex-husband testified that she drank a six-pack a day during the pregnancy, and that Dixon also used marijuana by herself and with her mother. The Child Protective Services investigator testified that Dixon described her-

self as an alcoholic, admitted drinking during the pregnancy, but didn't think it hurt the child. Dixon's mother told the investigator that Dixon drank during the pregnancy with B.P.

Special question 2.a asked whether Dixon has a mental or emotional illness or a mental deficiency that renders her unable to provide for the physical, mental, and emotional needs of the children and that the illness or deficiency will continue to render her unable to provide for the children's needs until their 18th birthday. A licensed psychologist testified that Dixon suffered from a mental disorder that included an antisocial personality, impulsiveness, lack of insight, projecting blame, and problems in developing maturity. The psychologist also testified that unless Dixon was able to remain free of alcohol, it would be unlikely that she would be able to parent the children effectively and appropriately.

Dixon testified that she suffered relapses with her drinking and that she did not benefit from A.A. meetings. Dixon was also convicted of public intoxication within six months of the termination hearing. The man Dixon was living with testified that he observed her drinking and using illegal drugs on numerous occasions and that Dixon was involved in a car wreck while drinking. Further, several case workers and employees of Child Protective Services testified about Dixon's numerous failures to complete treatments and programs, and numerous lies to caseworkers about her repeated drinking and drug use.

While Dixon personally contested and attempted to rebut the evidence here, in determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *See In re W.S.*, 899 S.W.2d at 775. The facts of this case presented by the State and the attorney ad litem on each of the special issues are far more than a scintilla, and Dixon's testimony does not conclusively establish the opposite of any vital fact. Further, the record contains copious evidence of vital facts and no rule of law or evidence prevents this court from giving weight to that evidence. *See id.* at 776–77.

The numerous incidents of neglect and dangerous conditions evinced in the record here sufficiently establish a pattern of conduct of obvious harm to the children's emotional and mental well being as defined in the special issues. Moreover, given the testimony of the expert witness and several case workers on Dixon's future ability to care for the children because of her repeated lapses into alcohol and drug use, the evidence here was not so weak or so contrary to the overwhelming weight of the evidence that the finding should be set aside and a new trial ordered. *See Garza*, 395 S.W.2d at 823.

### Conclusion

Because the testimony of the two witnesses for the ad litem was admissible and the evidence is legally and factually sufficient to support the jury's answers to each of the special questions, we affirm the trial court's judgment.