**In the Interest of P.R.**

No. 2–98–294–CV.

Court of Appeals of Texas,
Fort Worth.

June 17, 1999.

Ordered Published July 15, 1999.

Donald T. Fulton, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Assistant Criminal District Attorney, Anne E. Swenson, Assistant Criminal District Attorney, Melissa R. Paschall, Assistant Criminal District Attorney, Nancy Dewees, Assistant Criminal District Attorney, Fort Worth, for Appellee.

Panel B: LIVINGSTON, BRIGHAM, and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

This is a parental termination case, in which the trial court terminated the parental rights of Dana Meissner (P.R.'s mother) and Mike Davis (P.R.'s alleged biological father). The trial court also dismissed custody petitions filed by P.R.'s relatives: Troy Meissner, Janet Meissner, Sue Freehling, and Austin Meissner. Dana Meissner appeals on three points, challenging the sufficiency of the evidence and the effectiveness of Mike Davis' waiver of interest. Troy Meissner, Janet Meissner, Sue Freehling, and Austin Meissner appeal separately, each contending that the trial court abused its discretion by refusing to grant their petitions for custody of P.R., by failing to consider whether P.R.'s parents are willing and able to provide P.R. with a safe environment, and by failing to place P.R. with a "parent" or "grandparent." Because we find that the evidence is sufficient to terminate the parental rights of Dana Meissner and Mike Davis, that Janet Meissner and Austin Meissner are not properly before this court, and that Troy Meissner's and Sue Freehling's complaints are moot, we affirm.

### I. BACKGROUND

Dana Meissner is the natural mother of P.R. Before P.R.'s birth, Dana was married to Troy Meissner and resided with him in Aurora, Colorado. On June 26, 1996, about 90 days before P.R. was born, Dana and Troy were divorced by a court in

Colorado.[1] Troy was appointed managing conservator of their minor child, Austin Meissner, in the divorce proceedings. Troy is now married to Janet Meissner.

On February 16, 1996, Dana met Paul Robinson. Sometime near the beginning of March 1996, Dana and Paul moved to Texas. P.R. was born September 30, 1996, in Tarrant County. On December 2, 1996, Dana took P.R. to the emergency room at DFW Medical Center because he could not digest his formula. The physicians x-rayed P.R. and diagnosed his problem as colic. Because the doctors thought the x-rays showed a fractured femur, they notified the Texas Department of Protective and Regulatory Services ("TDPRS").

On December 6, 1996, TDPRS investigator Keith Gailes told Dana about the x-rays, that he was investigating the cause of the bone fracture, and he requested that Dana voluntarily place P.R. outside the home during the investigation. Dana voluntarily placed P.R. with an acquaintance, Sherry Banks.

On January 13, 1997, at the request of Gailes, Banks took P.R. to Cook Children's Medical Center for a follow-up examination. X-rays revealed that there was no fracture of P.R.'s legs, but did show four-week-old healing fractures on two of P.R.'s ribs. Gailes removed P.R. from Banks' home and placed him in the care of TDPRS. On January 15, 1997, the State filed a petition seeking to terminate the parental rights of Dana, Troy, and Mike Davis.[2] After a hearing on January 23, 1997, the trial court appointed TDPRS as P.R.'s temporary managing conservator.

On May 21, 1997, Troy filed a counter-petition seeking to be appointed as sole managing conservator of P.R. Troy claimed that he had standing as the presumed father. On June 10, 1997, the State filed a motion to dismiss Troy's counter-petition based on paternity tests that excluded Troy as the biological father of P.R. The trial court granted the State's motion and dismissed Troy's counter-petition with prejudice.

On July 7, 1997, Austin filed a *pro se* counter-petition through next friends, Troy and Janet, asking for modification of the temporary orders and that the court appoint Troy as managing non-parent conservator. On December 16, 1997, P.R's maternal grandmother, Sue Freehling, filed a petition to intervene, asking that Troy be named managing conservator. The trial court soon granted the State's motions to dismiss the petitions of Austin Meissner and Sue Freehling, finding that neither party had standing.

On June 22, 1998, the trial court signed a final judgment terminating the parental rights of Dana and Davis and appointing TDPRS managing conservator of the child P.R.

## II. PARENTAL TERMINATION OF DANA MEISSNER

In proceedings to terminate the parent-child relationship brought under former section 161.001 of the Family Code, the petitioner must establish by clear and convincing evidence one or more of the acts or omissions enumerated under subdivision (1) of the statute and must additionally prove, as required under subdivision (2), that termination of the parent-child relationship is in the best interest of the child.

---

1. Under Texas Family Code section 151.002(a)(1), Troy is presumed to be the biological father of P.R. TEX. FAM. CODE ANN. § 151.002(a)(1) (Vernon 1996) ("A man is presumed to be the biological father of a child if ... he and the child's biological mother are or have been married to each other and the child is born during the marriage or not more than 300 days after the date the marriage terminated ....").

2. The identity of P.R.'s biological father is uncertain. Dana told an investigator and caseworker for TDPRS that Mike Davis of Aurora, Colorado was the biological father. However, on September 16, 1997, Davis filed with the trial court an affidavit of waiver of interest in P.R., in which Davis specifically denied being the father of P.R. or having had a sexual relationship with Dana.

*See* Act of April 6, 1995, 74th Leg., R.S. ch. 20, § 1, 1995 Tex. Gen. Laws 113, 212–13 (amended 1997) (current version at TEX. FAM. CODE ANN. § 161.001 (Vernon Supp 1999));[3] *Richardson v. Green,* 677 S.W.2d 497, 499 (Tex.1984). The State's petition for parental termination, filed January 15, 1997, asked the trial court to terminate the parent-child relationship between Dana and P.R., alleging that it was in his best interest because Dana had:

(1) Knowingly placed or knowingly allowed the Child to remain in conditions or surroundings which endanger the emotional or physical well-being of the Child; or

(2) Engaged in conduct or knowingly placed the Child with persons who engaged in conduct which endangers the physical or emotional well-being of the Child; or

(3) Constructively abandoned the Child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services or an authorized agency for not less than one year, and:

(i) the department or authorized agency has made reasonable efforts to return the Child to the parent;

(ii) the parent has not visited or maintained contact with the Child; and

(iii) the parent has demonstrated an inability to provide the Child with a safe environment.

*See* FORMER TEX. FAM. CODE ANN. §§ 161.001(1)(D), (E), & (N) (Vernon 1996). After a hearing on the State's petition, the trial court found that Dana had committed all three of the alleged acts and that a termination of the parent-child relationship would be in P.R.'s best interest. The trial court signed the termination decree on June 22, 1998, and filed its findings

---

**3.** To be cited as FORMER TEX. FAM. CODE ANN. § 161.001 (Vernon 1996) for the remainder of the opinion.

---

of fact and conclusions of law on August 5, 1998.

In Dana's first point, she asserts that there is no evidence, or alternatively insufficient evidence, to support the trial court's judgment terminating her parental rights under the environment, conduct, and constructive abandonment theories of termination. *See id.* §§ 161.001(1)(D) (environment), (1)(E) (conduct), (1)(N) (constructive abandonment). More specifically, she challenges the evidence supporting the trial court's findings of fact numbers 7, 9, 13, 15, and 17:

■ The Court finds, by clear and convincing evidence, that [Dana], physically abused the child by fracturing his ribs.

. . . .

■ The Court finds, by clear and convincing evidence, that [Dana], physically abused the child, by allowing the child to have abrasions to his face.

. . . .

■ The Court finds, by clear and convincing evidence, that [Dana], constructively abandoned the child who has been in the conservatorship of the TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES for more than 1 year; and [Dana Meissner] did not follow through with her service plans, did not visit the child for over two months, and has not provided a home for the child.

. . . .

■ The Court finds, by clear and convincing evidence, that [Dana], knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical and emotional well-being of the child.

. . . .

■ The Court finds, by clear and convincing evidence, that [Dana], constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Texas

Department of Protective and Regulatory Services or an authorized agency for not less than 1 year; and

(i) the department or authorized agency has made reasonable efforts to return the Child to the parents;

(ii) the parent has not visited or maintained contact with the Child; and

(iii) the parent has demonstrated an inability to provide the Child with a safe environment.

Section 161.001 requires that the State only prove by clear and convincing evidence *one* of the enumerated culpable acts under subsection 1 and that the termination is in the best interest of the child. *See id.* § 161.001. Dana does not challenge finding of fact number 18, in which the trial court found that the termination was in the best interest of P.R. To prevail on appeal, she must establish that the trial court's findings as to all three of the State's pleaded grounds are unsupported by the evidence. *See In re B.B.,* 971 S.W.2d 160, 163 (Tex.App.—Beaumont 1998, pet. denied); *Ziegler v. Tarrant County Child Welfare Unit,* 680 S.W.2d 674, 678 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).

## A. Standard of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *See Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991); *In re W.S.,* 899 S.W.2d 772, 775 (Tex.App.—Fort Worth 1995, no writ). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *See In re W.S.,* 899 S.W.2d at 775; *Arena v. Arena,* 822 S.W.2d 645, 650 (Tex.App.—Fort Worth 1991, no writ); *Raposa v. Johnson,* 693 S.W.2d 43, 45 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.).

In determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *See In re W.S.,* 899 S.W.2d at 775–76. A "no evidence" point of error may only be sustained when the record discloses one of the following: 1) a complete absence of evidence of a vital fact; 2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; 3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or 4) the evidence establishes conclusively the opposite of a vital fact. *See id.* (citing *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.,* 793 S.W.2d 660, 666 n. 9 (Tex. 1990)).

Termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent. *See In re C.D.,* 962 S.W.2d 145, 146–47 (Tex.App.—Fort Worth 1998, no pet.); *In re A.V.,* 849 S.W.2d 393, 400 (Tex.App.—Fort Worth 1993, no writ). Nevertheless, the burden of proof by clear and convincing evidence in the trial court does not alter the appellate standard of review for factual sufficiency. *See In re C.D.,* 962 S.W.2d at 146–47; *Faram v. Gervitz–Faram,* 895 S.W.2d 839, 843 (Tex.App.—Fort Worth 1995, no writ) (rejecting the "intermediate standard of appellate review" in cases involving the clear-and-convincing burden of proof). Accordingly, to prevail on an assertion that the evidence supporting the termination of parental rights is "factually insufficient," the evidence supporting the finding must be so weak or the evidence to the contrary must be so overwhelming that the finding should be set aside and a new trial ordered. *See Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406 (Tex.), *cert. denied,* —— U.S. ——, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

## B. Finding of Fact No. 13

■ Dana asserts that the State failed to establish the elements of constructive abandonment under former section 161.001(1)(N). Under that section, a child is considered constructively abandoned if the child has been in the permanent or temporary managing conservatorship of the TDPRS for at least one year, and (1) TDPRS has made reasonable efforts to return the child to the parent; (2) the parent has not regularly visited or maintained significant contact with the child; and (3) the parent has demonstrated an inability to provide the child with a safe environment. FORMER TEX. FAM. CODE ANN. § 161.001(1)(N). When TDPRS initially took custody of P.R., a family service plan by TDPRS was imposed on Dana. It required her to submit to random drug testing, to attend court-ordered anger control classes, parenting classes, and individual counseling, to obtain stable employment for at least five months, and to obtain suitable housing and maintain it for more than five months. Dana tested negative for drug use, but routinely missed or skipped her counseling sessions, attended only two anger management classes, and attended no parenting classes. Since January 1997, Dana has had at least ten different jobs, lasting anywhere from a couple of days to two weeks, intermingled with periods of unemployment. During that same period, Dana also lived at 13 to 17 different locations, the longest duration of residency lasting only two and a half months. At the time of trial, Dana had been at her current job less than six weeks and at her current residence less than three weeks.

Dana has failed to regularly visit or maintain significant contact with P.R. During the five and a half weeks that P.R. lived with Banks, Dana visited P.R. one time. While Dana did visit P.R. almost weekly from February 1997 to October 1997, she did not visit one time during November 1997, and only visited him once during December 1997. Dana resumed visiting P.R. two to three times a month in January 1998, but between April 7, 1998, and June 15, 1998, the date of the trial, she only visited P.R. one time. The TDPRS caseworker in charge of this case testified that because Dana's visits have been so sporadic, there is no bonding between Dana and P.R., and P.R. does not remember her. Dana conceded at trial that she does not think that P.R. would recognize her.

The evidence also showed Dana's inability to provide a safe environment for P.R. because she has lived at 13 to 17 different places in the last year and a half and has an unstable employment history. Dana failed to get P.R. immunized against illnesses. There is evidence that Dana used methamphetamines sometime after P.R. was born and smoked marijuana the day before a court-ordered psychological evaluation.

Having carefully reviewed and considered the evidence, we find that the evidence is sufficient to support the trial court's finding that Dana constructively abandoned P.R. Because Dana did not challenge the trial court's finding of best interest and because the evidence supports the trial court's finding of constructive abandonment, the evidence is sufficient to support the trial court's judgment terminating Dana's parental rights, and we need not address the evidence supporting the court's other findings of fact. We overrule point one.

## III. PARENTAL TERMINATION OF MIKE DAVIS

■ In Dana's second and third points, she asserts that the trial court lacked personal jurisdiction over Davis, the alleged biological father, and that the evidence is insufficient to support the termination of his parental rights. It is well established that a party on appeal may not complain of errors that do not injuriously affect him or that merely affect the rights of others. *See Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 150–51 (Tex.

1982); *In re B.B.*, 971 S.W.2d at 163. Davis has not appealed the termination of his parental rights, and Dana does not have standing to assert any errors on his behalf. We overrule points two and three.

## IV. TEMPORARY CUSTODY

 Troy, Janet, Austin, and Freehling contend in three points that the trial court abused its discretion by refusing to consider other family members in the placement of P.R. at the permanency hearings, by failing to consider the statutorily-mandated factors in determining whether P.R.'s parents, including Troy as presumed father, are willing and able to provide P.R. with a safe environment, and by failing to place P.R. with a parent or grandparent pursuant to TEX. FAM. CODE ANN. §§ 102.003(1), 102.004(a)(1), 102.004(b), 263.306, & 263.307 (Vernon 1996). The State, on the other hand, asserts that Janet and Austin are not properly before this court and that all of the complaints are moot. We agree.

On September 21, 1998, Dana, Troy, Janet, and Freehling filed a joint notice of appeal. The notice of appeal does not state that either Troy or Janet appeal in their representative capacity as "next friend" to Austin. Austin is not properly before us because she failed to file a notice of appeal, and Janet is not properly before us because she was not a party in her individual capacity in the underlying parental-termination suit. *See* TEX. R. APP. P. 25 .1.

The appeals by Troy and Freehling challenge the trial court's order naming TDPRS as temporary managing conservator of P.R. Temporary orders are binding only until a final judgment is entered appointing a permanent managing conservator. *See Morris v. Morris*, 654 S.W.2d 789, 791 (Tex.App.—Tyler 1983, no writ). Here, the trial court signed a final judgment on June 22, 1998 appointing TDPRS as the permanent managing conservator. Therefore, Troy's and Freehling's complaints are moot. *See Kotrla v. Kotrla*, 718 S.W.2d 853, 857 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Garner v. Garner*, 673 S.W.2d 413, 418 (Tex.App.—Fort Worth 1984, writ dism'd).

## V. CONCLUSION

Because we find the evidence legally and factually sufficient to support the trial court's order terminating Dana's parental-child relationship with P.R., that Dana has no standing to assert complaints on behalf of Davis, that Janet and Austin are not properly before this court, and that Troy's and Freehling's complaints are moot, we affirm the trial court's order terminating Dana's and Davis' parental rights and naming TDPRS as managing conservator.