# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-05-00498-CV
---

**Peggy Castillo, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---
### FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT
### NO. C2004-0255C, HONORABLE BRENDA CHAPMAN, JUDGE PRESIDING
---

### M E M O R A N D U M   O P I N I O N

The Department of Family and Protective Services first became involved with appellant Peggy Castillo and her seven children, several of whom have medical problems or learning disabilities, in 1997. During the Department's involvement with her, Castillo and her children lived for a time with Richard Castillo, who is her husband and the children's father, from whom she was separated at the time of trial, and at other times with Val Rodriguez, who was her boyfriend until about six months before trial. Over the course of about six years, the Department received numerous referrals that the living conditions were filthy, the children were neglected and abused, they went to school dirty and infested with lice and sometimes roaches, and their health problems were not adequately addressed. Most recently, the Department removed the children in March 2004 after receiving several referrals of possible physical abuse by Val Rodriguez. The Department sought

termination rather than reunification because it believed that it had no further resources to offer Castillo to improve her parenting skills and ensure the safety and well-being of the children. The two youngest children, ages three and five at the time of trial, and the oldest, who suffers from severe physical and emotional disabilities, were placed with the children's paternal grandmother. The middle four children, ranging from six to nine years old, were placed with their paternal aunt, who is a pediatric nurse; two of those children have special needs.

After a seven-day trial, the jury found that Castillo's rights as to all seven children should be terminated. After the trial court signed an order terminating her rights in accordance with the jury's verdict, Castillo filed a motion for new trial and a statement of the points on which she intended to appeal. The trial court denied her motion for new trial and found that her appellate points were frivolous. Castillo appeals, arguing in two issues that the trial court erred in finding her points to be frivolous. She contends that the evidence is factually insufficient to support a finding that termination is in the children's best interest and that the trial court should have excluded a videotaped interview with one of the children because the Department did not disclose it during discovery. We affirm the trial court's termination order.

**Standard of Review**

Section 263.405 of the family code requires a parent appealing from a termination order to file a statement of the points on which she intends to appeal. Tex. Fam. Code Ann. § 263.405(b) (West Supp. 2005). The trial court must then hold a hearing and determine, among other things, whether the appeal is frivolous. *Id*. § 263.405(d)(3); *see* Tex. Civ. Prac. & Rem. Code Ann. § 13.003 (West 2002). We review a trial court's determination of frivolousness under an abuse

2

of discretion standard. *In re H.D.H.*, 127 S.W.3d 921, 923 (Tex. App.—Beaumont 2004, no pet.); *De La Vega v. Taco Cabana, Inc.*, 974 S.W.2d 152, 154 (Tex. App.—San Antonio 1998, no pet.). An appeal is frivolous if it lacks an arguable basis in law or fact. *De La Vega*, 974 S.W.2d at 154 (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). In deciding whether an appeal is frivolous, we consider whether the complaining party has presented a substantial question for appellate review. Tex. Civ. Prac. & Rem. Code Ann. § 13.003(b). If, after considering the evidence presented at trial, we uphold the trial court's determination of frivolousness, we will affirm the court's judgment. *See In re B.Y.*, No. 02-05-00332-CV, 2006 Tex. App. LEXIS 5357, at *4 (Tex. App.—Fort Worth June 22, 2006, no pet. h.) (mem. op.) (court reviewed evidence admitted at trial, agreed that appeal would not present substantial question for review, overruled challenge to finding of frivolousness, and affirmed judgment).

Castillo argues that the evidence is factually insufficient to support the finding that termination is in the children's best interest and that the trial court erroneously admitted a videotaped interview of one of the children. The trial court held a hearing to consider her appellate points and found that her points were frivolous, presenting no substantial questions for review. To determine whether the trial court abused its discretion in making its finding of frivolousness, we must first decide whether the trial court "had sufficient evidence upon which to exercise its discretion, and, second, we determine whether the trial court erred in the application of its discretion." *In re M.R.J.M.*, No. 02-05-00392-CV, 2006 Tex. App. LEXIS 3040, at *8 (Tex. App.—Fort Worth Apr. 13, 2006, no pet.) (op. & order). To decide whether Castillo raised a substantial question as to the evidence supporting the best-interest finding, we must review all of the evidence in the record and

3

conduct a standard sufficiency review. *See id*. at *9, *14. Similarly, to determine whether the trial court abused its discretion in finding that her point related to the videotape was frivolous, we must decide the merits of whether the admission of the videotape was proper.

To terminate the parent-child relationship, the Department must prove by clear and convincing evidence that the parent committed an act or omission amounting to statutory grounds for termination and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001 (West 2002); *Smith v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 678 (Tex. App.—Austin 2005, no pet.). Clear and convincing evidence is proof that produces in the fact-finder's mind a firm conviction as to the truth of the Department's allegations. *Smith*, 160 S.W.3d at 679. A factual sufficiency challenge fails if "the evidence is such that a reasonable fact-finder could form a firm belief or conviction that grounds exist for termination and that termination is in the best interest of the child." *Id*. Issues of witness credibility that depend on appearance and demeanor are left to the jury, and we will defer to the jury's determinations, as long as they are not unreasonable. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)). In deciding whether termination is in the child's best interest, the fact-finder should consider factors such as: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) present and future emotional and physical danger posed to the child; (4) the parenting abilities of the individuals seeking custody; (5) programs available to assist the parent seeking custody; (6) plans for the child by the parent or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts

4

or omissions that indicate an improper parent-child relationship; and (9) any excuse for those acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *Smith*, 160 S.W.3d at 679.

**Best Interest of the Children**

Castillo does not dispute that there was sufficient evidence establishing the statutory grounds for termination. *See* Tex. Fam. Code Ann. § 161.001. She argues only that the evidence does not show that termination was in the children's best interest because there was evidence that she wanted to do what was best for her children and so began to make "major changes" in her life and ended an unhealthy relationship. She notes that Sherry Flume, a supervisor with the Department, testified that Castillo had found stable and clean housing, was employed, and loved her children, and that the children loved Castillo. Social worker Luisa Farias worked with one of Castillo's children and believed he had been abused and suffered from a mood disorder and post-traumatic stress disorder, but testified that she had no opinion as to whether it was in the child's best interest to have Castillo's rights terminated. Castillo also points to her own testimony that she loved her children more than anything else in the world and did not want the children, who were close to one another, to be broken up among different homes. She asserts that the jury could not have found by clear and convincing evidence that termination was in the children's best interest.

However, Castillo ignores testimony by several witnesses, including two Department employees, as well as a therapist who worked with four of the children, the four oldest children's doctor, the children's paternal aunt, and the children's court-appointed advocate. Flume testified that she believed it was in the children's best interest for Castillo's rights to be terminated and for the children to be placed in adoptive homes. She testified that she based her opinion on several factors,

5

saying that the Department had worked with Castillo over a number of years, attempting to provide services to help her become an appropriate parent, that the children were now in clean homes, away from the roaches and filth they had lived with while with Castillo, and the desires of the older children, who said that although they loved Castillo, they knew they were better off in their new homes. Judy Dimas, a Department caseworker assigned to the children's case, testified that, based on the factors to be considered in deciding the children's best interest, she believed it was in their best interest for Castillo's rights to be terminated and for them to remain in their current placements.

Therapist Patricia Barnes testified that she worked with four of Castillo's children and that she believed Castillo had endangered them physically, emotionally, and socially and had abused them sexually, emotionally, and physically. Barnes testified that she believed that, as for the four children with whom she worked, it was in their best interest for Castillo's rights to be terminated. Barnes explained that although Castillo worked hard to regain the children, she was unable to maintain the positive changes that she made and that the children were removed repeatedly. Barnes said two of the children had worked very hard to achieve some amount of emotional stability, although one of Castillo's sons acted out sexually and one of her daughters had a "very guarded" prognosis and Barnes did not know "how much further [Barnes] can take her." Barnes said the older children expressed a desire to stay with their aunt, where they were living at the time of trial. Barnes said that, based on her reading of Castillo's history with the Department, Castillo "can pull things together once she's in CPS, has CPS services, and then slowly disintegrates." Barnes also described a phone call between Castillo and the children that occurred about one month before trial. Barnes said the children had not had contact with Castillo for two or three months, and during that time,

their self-esteem had improved, they had been stable and happy, and had not "had any bouts of aggression towards other children." Barnes said that after the phone conversation with Castillo, they "have all been aggressive," one of the boys began acting out sexually, and one of the girls had to be hospitalized because she was banging her head on the wall and had stabbed herself with a pencil and tried to jump from a moving bus. Since being removed from Castillo's care, all of the children had been prescribed medications, including anti-psychotics and anti-depressants.

Pediatrician Timothy Owens testified about his observations of the five oldest children dating back to 1999. He testified that the children were usually dirty and unkempt, that their teeth were neglected, and that they had lice on several occasions. Dr. Owens said Castillo did not follow his medical recommendations, even for serious medical issues, and did not care "for the children in some of the basic ways that we normally see." Dr. Owens believed it would help the children "[i]f somebody else could take care of these kids better." The therapist who examined Castillo's second-youngest son, who was five years old at the time of trial, testified that the child did not want to see Castillo and did not want to return to living with her.

Lonnettee Holmesley, the children's court-appointed special advocate, opined that Castillo's rights should be terminated and she felt "strongly that these children also, all seven, deserve to be safe and clean, and have permanency in their life and deserve a chance." Holmesley testified that although Castillo had recently found employment and clean housing, the children have "suffered too long" and need to be safe and stable. The children's paternal aunt testified that the four children living with her do not want to return to Castillo and are afraid of ceiling fans because Castillo and Rodriguez used to hold them up near a running fan and allow it to hit them or threaten

7

to do so. She is using medicaid to help care for the children and has moved into a larger house so the children have more space. Based on what she had seen and heard, she believed termination was in the children's best interest. Gayle Michalek, a counselor who does contract work for the Department, stated that she worked with Castillo on her parenting skills and testified that although Castillo understood and made progress based on the information she was given about safety, the children's various special needs, discipline methods, and hygiene, that progress was slow and was not consistent or sustained. Michalek testified that Castillo has poor judgment that sometimes results in the children being left with inappropriate care givers or in dangerous situations.

Having reviewed the entire record, including Castillo's protracted history with the Department and the services she has been offered, the children's medical difficulties, and the children's current placements with concerned and able caretakers, we hold that the evidence is factually sufficient to allow the jury to have reached a firm conclusion that termination was in the children's best interest. *See Holley*, 544 S.W.2d at 372. Therefore, the trial court did not abuse its discretion in finding that Castillo's factual sufficiency point was frivolous. We overrule Castillo's first issue on appeal.

**Admission of the Videotape**

In her second issue, Castillo argues that the trial court should not have admitted the videotaped interview with A.C., Castillo's son who was nine at the time of trial, in which A.C. describes his allegations of sexual abuse. Castillo objected to the admission of the tape, which was not disclosed by the Department pretrial in response to her motion for disclosure of exhibits. The children's ad litem, not the Department, sought to introduce the tape, pointing out that Castillo had

8

not served him with any disclosure requests. The trial court allowed the tape, ruling that, although it did not approve of the Department's failure to disclose videotapes of which it was or should have been aware, the ad litem was not barred from producing the tape in support of the children's case. After the video was played for the jury, A.C. was called to testify, and he alleged that Castillo and Rodriguez abused him physically, including lifting him up so the ceiling fan hit him, and sexually, touching his "middle" and making him touch Rodriguez's "middle."

This case is very similar to *In re C.D.*, in which the attorney ad litem called two witnesses that had not been designated by the Department in response to the parent's discovery requests. 962 S.W.2d 145, 146 (Tex. App.—Fort Worth 1998, no pet.). The parent objected to the witnesses, but the attorney ad litem argued that their testimony was relevant to his recommendation of termination. *Id.* The trial court, although sympathetic to the parent's argument, ruled, "[Y]ou have to anticipate that [the children's ad litem] can be able to call witnesses if they're going to adequately protect their—the children's interest." *Id.* at 147. The court of appeals agreed, holding because the parent did not serve discovery requests on the ad litem, who represented a party to the suit, the ad litem had no duty to disclose the evidence he intended to produce; thus, nothing barred him from "calling witnesses whose testimony was relevant to the best interest of the children, even if the State could not have called them due to its failure to disclose." *Id.* We agree with our sister court and hold that because the ad litem was not served with any requests for disclosure, his introduction of A.C.'s recorded interview was not barred by a failure to disclose.

Further, numerous witnesses testified about A.C.'s allegations and about the years of startling neglect and abuse suffered by the children, and A.C. himself testified at trial to the same

allegations made during his recorded interview. Even if there had been error in admitting the recorded statement, such error was harmless in view of the entire record. *See* Tex. R. App. P. 44.1(a)(1) (error is not reversible unless it probably caused the rendition of improper judgment); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989) (no reversal for evidentiary error unless error reasonably calculated to cause and probably did cause rendition of improper judgment; courts "will ordinarily not find reversible error for erroneous rulings on admissibility of evidence where the evidence in question is cumulative and not controlling on a material issue dispositive of the case"). The trial court did not abuse its discretion in finding that Castillo's complaint related to the videotape was frivolous. We overrule Castillo's second issue on appeal.

### Conclusion

Having overruled both of Castillo's issues, we hold that the trial court did not abuse its discretion in finding that Castillo's issues on appeal were frivolous. *See* Tex. Fam. Code Ann. § 263.405(b); *De La Vega*, 974 S.W.2d at 154; *see also M.R.J.M.*, 2006 Tex. App. LEXIS 3040, at *9, *13-14. We affirm the trial court's order terminating Castillo's parental rights.

_____

David Puryear, Justice

Before Justices B. A. Smith, Puryear and Waldrop

Affirmed

Filed: July 28, 2006

10