TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-05-00498-CV






Peggy Castillo, Appellant


v.


Texas Department of Family and Protective Services, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT

NO. C2004-0255C, HONORABLE BRENDA CHAPMAN, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 The Department of Family and Protective Services first became involved with
appellant Peggy Castillo and her seven children, several of whom have medical problems or learning
disabilities, in 1997. During the Department's involvement with her, Castillo and her children lived
for a time with Richard Castillo, who is her husband and the children's father, from whom she was
separated at the time of trial, and at other times with Val Rodriguez, who was her boyfriend until
about six months before trial. Over the course of about six years, the Department received numerous
referrals that the living conditions were filthy, the children were neglected and abused, they went to
school dirty and infested with lice and sometimes roaches, and their health problems were not
adequately addressed. Most recently, the Department removed the children in March 2004 after
receiving several referrals of possible physical abuse by Val Rodriguez. The Department sought
termination rather than reunification because it believed that it had no further resources to offer
Castillo to improve her parenting skills and ensure the safety and well-being of the children. The
two youngest children, ages three and five at the time of trial, and the oldest, who suffers from severe
physical and emotional disabilities, were placed with the children's paternal grandmother. The
middle four children, ranging from six to nine years old, were placed with their paternal aunt, who
is a pediatric nurse; two of those children have special needs.

 After a seven-day trial, the jury found that Castillo's rights as to all seven children
should be terminated. After the trial court signed an order terminating her rights in accordance with
the jury's verdict, Castillo filed a motion for new trial and a statement of the points on which she
intended to appeal. The trial court denied her motion for new trial and found that her appellate
points were frivolous. Castillo appeals, arguing in two issues that the trial court erred in finding her
points to be frivolous. She contends that the evidence is factually insufficient to support a finding
that termination is in the children's best interest and that the trial court should have excluded a
videotaped interview with one of the children because the Department did not disclose it during
discovery. We affirm the trial court's termination order.


Standard of Review


 Section 263.405 of the family code requires a parent appealing from a termination
order to file a statement of the points on which she intends to appeal. Tex. Fam. Code Ann.
§ 263.405(b) (West Supp. 2005). The trial court must then hold a hearing and determine, among
other things, whether the appeal is frivolous. Id. § 263.405(d)(3); see Tex. Civ. Prac. & Rem. Code
Ann. § 13.003 (West 2002). We review a trial court's determination of frivolousness under an abuse
of discretion standard. In re H.D.H., 127 S.W.3d 921, 923 (Tex. App.--Beaumont 2004, no pet.);
De La Vega v. Taco Cabana, Inc., 974 S.W.2d 152, 154 (Tex. App.--San Antonio 1998, no pet.). 
An appeal is frivolous if it lacks an arguable basis in law or fact. De La Vega, 974 S.W.2d at 154
(quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). In deciding whether an appeal is frivolous,
we consider whether the complaining party has presented a substantial question for appellate review. 
Tex. Civ. Prac. & Rem. Code Ann. § 13.003(b). If, after considering the evidence presented at trial,
we uphold the trial court's determination of frivolousness, we will affirm the court's judgment. See
In re B.Y., No. 02-05-00332-CV, 2006 Tex. App. LEXIS 5357, at *4 (Tex. App.--Fort Worth June
22, 2006, no pet. h.) (mem. op.) (court reviewed evidence admitted at trial, agreed that appeal would
not present substantial question for review, overruled challenge to finding of frivolousness, and
affirmed judgment).

 Castillo argues that the evidence is factually insufficient to support the finding that
termination is in the children's best interest and that the trial court erroneously admitted a videotaped
interview of one of the children. The trial court held a hearing to consider her appellate points and
found that her points were frivolous, presenting no substantial questions for review. To determine
whether the trial court abused its discretion in making its finding of frivolousness, we must first
decide whether the trial court "had sufficient evidence upon which to exercise its discretion, and,
second, we determine whether the trial court erred in the application of its discretion." In re
M.R.J.M., No. 02-05-00392-CV, 2006 Tex. App. LEXIS 3040, at *8 (Tex. App.--Fort Worth Apr.
13, 2006, no pet.) (op. & order). To decide whether Castillo raised a substantial question as to the
evidence supporting the best-interest finding, we must review all of the evidence in the record and
conduct a standard sufficiency review. See id. at *9, *14. Similarly, to determine whether the trial
court abused its discretion in finding that her point related to the videotape was frivolous, we must
decide the merits of whether the admission of the videotape was proper.

 To terminate the parent-child relationship, the Department must prove by clear and
convincing evidence that the parent committed an act or omission amounting to statutory grounds
for termination and that termination is in the child's best interest. See Tex. Fam. Code Ann.
§ 161.001 (West 2002); Smith v. Texas Dep't of Protective & Regulatory Servs., 160 S.W.3d 673,
678 (Tex. App.--Austin 2005, no pet.). Clear and convincing evidence is proof that produces in the
fact-finder's mind a firm conviction as to the truth of the Department's allegations. Smith, 160
S.W.3d at 679. A factual sufficiency challenge fails if "the evidence is such that a reasonable
fact-finder could form a firm belief or conviction that grounds exist for termination and that
termination is in the best interest of the child." Id. Issues of witness credibility that depend on
appearance and demeanor are left to the jury, and we will defer to the jury's determinations, as long
as they are not unreasonable. In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005) (quoting Southwestern
Bell Tel. Co. v. Garza, 164 S.W.3d 607, 625 (Tex. 2004)). In deciding whether termination is in the
child's best interest, the fact-finder should consider factors such as: (1) the child's desires; (2) the
child's present and future emotional and physical needs; (3) present and future emotional and
physical danger posed to the child; (4) the parenting abilities of the individuals seeking custody; (5)
programs available to assist the parent seeking custody; (6) plans for the child by the parent or
agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts
or omissions that indicate an improper parent-child relationship; and (9) any excuse for those acts
or omissions. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976); Smith, 160 S.W.3d at 679.


Best Interest of the Children


 Castillo does not dispute that there was sufficient evidence establishing the statutory
grounds for termination. See Tex. Fam. Code Ann. § 161.001. She argues only that the evidence
does not show that termination was in the children's best interest because there was evidence that
she wanted to do what was best for her children and so began to make "major changes" in her life
and ended an unhealthy relationship. She notes that Sherry Flume, a supervisor with the Department,
testified that Castillo had found stable and clean housing, was employed, and loved her children, and
that the children loved Castillo. Social worker Luisa Farias worked with one of Castillo's children
and believed he had been abused and suffered from a mood disorder and post-traumatic stress
disorder, but testified that she had no opinion as to whether it was in the child's best interest to have
Castillo's rights terminated. Castillo also points to her own testimony that she loved her children
more than anything else in the world and did not want the children, who were close to one another,
to be broken up among different homes. She asserts that the jury could not have found by clear and
convincing evidence that termination was in the children's best interest.

 However, Castillo ignores testimony by several witnesses, including two Department
employees, as well as a therapist who worked with four of the children, the four oldest children's
doctor, the children's paternal aunt, and the children's court-appointed advocate. Flume testified that
she believed it was in the children's best interest for Castillo's rights to be terminated and for the
children to be placed in adoptive homes. She testified that she based her opinion on several factors,
saying that the Department had worked with Castillo over a number of years, attempting to provide
services to help her become an appropriate parent, that the children were now in clean homes, away
from the roaches and filth they had lived with while with Castillo, and the desires of the older
children, who said that although they loved Castillo, they knew they were better off in their new
homes. Judy Dimas, a Department caseworker assigned to the children's case, testified that, based
on the factors to be considered in deciding the children's best interest, she believed it was in their
best interest for Castillo's rights to be terminated and for them to remain in their current placements.

 Therapist Patricia Barnes testified that she worked with four of Castillo's children and
that she believed Castillo had endangered them physically, emotionally, and socially and had abused
them sexually, emotionally, and physically. Barnes testified that she believed that, as for the four
children with whom she worked, it was in their best interest for Castillo's rights to be terminated. 
Barnes explained that although Castillo worked hard to regain the children, she was unable to
maintain the positive changes that she made and that the children were removed repeatedly. Barnes
said two of the children had worked very hard to achieve some amount of emotional stability,
although one of Castillo's sons acted out sexually and one of her daughters had a "very guarded"
prognosis and Barnes did not know "how much further [Barnes] can take her." Barnes said the older
children expressed a desire to stay with their aunt, where they were living at the time of trial. Barnes
said that, based on her reading of Castillo's history with the Department, Castillo "can pull things
together once she's in CPS, has CPS services, and then slowly disintegrates." Barnes also described
a phone call between Castillo and the children that occurred about one month before trial. Barnes
said the children had not had contact with Castillo for two or three months, and during that time,
their self-esteem had improved, they had been stable and happy, and had not "had any bouts of
aggression towards other children." Barnes said that after the phone conversation with Castillo, they
"have all been aggressive," one of the boys began acting out sexually, and one of the girls had to be
hospitalized because she was banging her head on the wall and had stabbed herself with a pencil and
tried to jump from a moving bus. Since being removed from Castillo's care, all of the children had
been prescribed medications, including anti-psychotics and anti-depressants. 

 Pediatrician Timothy Owens testified about his observations of the five oldest
children dating back to 1999. He testified that the children were usually dirty and unkempt, that their
teeth were neglected, and that they had lice on several occasions. Dr. Owens said Castillo did not
follow his medical recommendations, even for serious medical issues, and did not care "for the
children in some of the basic ways that we normally see." Dr. Owens believed it would help the
children "[i]f somebody else could take care of these kids better." The therapist who examined
Castillo's second-youngest son, who was five years old at the time of trial, testified that the child did
not want to see Castillo and did not want to return to living with her.

 Lonnettee Holmesley, the children's court-appointed special advocate, opined that
Castillo's rights should be terminated and she felt "strongly that these children also, all seven,
deserve to be safe and clean, and have permanency in their life and deserve a chance." Holmesley
testified that although Castillo had recently found employment and clean housing, the children have
"suffered too long" and need to be safe and stable. The children's paternal aunt testified that the four
children living with her do not want to return to Castillo and are afraid of ceiling fans because
Castillo and Rodriguez used to hold them up near a running fan and allow it to hit them or threaten
to do so. She is using medicaid to help care for the children and has moved into a larger house so
the children have more space. Based on what she had seen and heard, she believed termination was
in the children's best interest. Gayle Michalek, a counselor who does contract work for the
Department, stated that she worked with Castillo on her parenting skills and testified that although
Castillo understood and made progress based on the information she was given about safety, the
children's various special needs, discipline methods, and hygiene, that progress was slow and was
not consistent or sustained. Michalek testified that Castillo has poor judgment that sometimes results
in the children being left with inappropriate care givers or in dangerous situations.

 Having reviewed the entire record, including Castillo's protracted history with the
Department and the services she has been offered, the children's medical difficulties, and the
children's current placements with concerned and able caretakers, we hold that the evidence is
factually sufficient to allow the jury to have reached a firm conclusion that termination was in the
children's best interest. See Holley, 544 S.W.2d at 372. Therefore, the trial court did not abuse its
discretion in finding that Castillo's factual sufficiency point was frivolous. We overrule Castillo's
first issue on appeal.


Admission of the Videotape


 In her second issue, Castillo argues that the trial court should not have admitted the
videotaped interview with A.C., Castillo's son who was nine at the time of trial, in which A.C.
describes his allegations of sexual abuse. Castillo objected to the admission of the tape, which was
not disclosed by the Department pretrial in response to her motion for disclosure of exhibits. The
children's ad litem, not the Department, sought to introduce the tape, pointing out that Castillo had
not served him with any disclosure requests. The trial court allowed the tape, ruling that, although
it did not approve of the Department's failure to disclose videotapes of which it was or should have
been aware, the ad litem was not barred from producing the tape in support of the children's case. 
After the video was played for the jury, A.C. was called to testify, and he alleged that Castillo and
Rodriguez abused him physically, including lifting him up so the ceiling fan hit him, and sexually,
touching his "middle" and making him touch Rodriguez's "middle."

 This case is very similar to In re C.D., in which the attorney ad litem called two
witnesses that had not been designated by the Department in response to the parent's discovery
requests. 962 S.W.2d 145, 146 (Tex. App.--Fort Worth 1998, no pet.). The parent objected to the
witnesses, but the attorney ad litem argued that their testimony was relevant to his recommendation
of termination. Id. The trial court, although sympathetic to the parent's argument, ruled, "[Y]ou
have to anticipate that [the children's ad litem] can be able to call witnesses if they're going to
adequately protect their--the children's interest." Id. at 147. The court of appeals agreed, holding
because the parent did not serve discovery requests on the ad litem, who represented a party to the
suit, the ad litem had no duty to disclose the evidence he intended to produce; thus, nothing barred
him from "calling witnesses whose testimony was relevant to the best interest of the children, even
if the State could not have called them due to its failure to disclose." Id. We agree with our sister
court and hold that because the ad litem was not served with any requests for disclosure, his
introduction of A.C.'s recorded interview was not barred by a failure to disclose.

 Further, numerous witnesses testified about A.C.'s allegations and about the years
of startling neglect and abuse suffered by the children, and A.C. himself testified at trial to the same
allegations made during his recorded interview. Even if there had been error in admitting the
recorded statement, such error was harmless in view of the entire record. See Tex. R. App. P.
44.1(a)(1) (error is not reversible unless it probably caused the rendition of improper judgment); Gee
v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989) (no reversal for evidentiary error
unless error reasonably calculated to cause and probably did cause rendition of improper judgment;
courts "will ordinarily not find reversible error for erroneous rulings on admissibility of evidence
where the evidence in question is cumulative and not controlling on a material issue dispositive of
the case"). The trial court did not abuse its discretion in finding that Castillo's complaint related to
the videotape was frivolous. We overrule Castillo's second issue on appeal.


Conclusion


 Having overruled both of Castillo's issues, we hold that the trial court did not abuse
its discretion in finding that Castillo's issues on appeal were frivolous. See Tex. Fam. Code Ann.
§ 263.405(b); De La Vega, 974 S.W.2d at 154; see also M.R.J.M., 2006 Tex. App. LEXIS 3040, at
*9, *13-14. We affirm the trial court's order terminating Castillo's parental rights.



 __________________________________________

 David Puryear, Justice

Before Justices B. A. Smith, Puryear and Waldrop

Affirmed

Filed: July 28, 2006